**UNITED STATES of America,**

v.

**Jeannette N. BUSH, Appellant.**

**No. 79–1680.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1980.

Decided Jan. 30, 1981.

---

Allen S. Rugg, Alexandria, Va., with whom Laurence Sarezky, Alexandria, Va., was on the brief, for appellant.

Regina C. McGranery, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Peter E. George and David S. Krakoff, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before SPOTTSWOOD W. ROBINSON, III and WALD, Circuit Judges, and JUNE L. GREEN,* District Judge.

Opinion for the Court filed by Circuit Judge, SPOTTSWOOD W. ROBINSON, III.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

At a jury trial in the District Court, appellant was found guilty on five counts of falsely altering governmental forms for purposes of obtaining money from the United States.[1] On this appeal, she challenges the convictions on two grounds. Noting that the court permitted amendments of the indictment at the onset of trial, she asserts a violation of the Fifth Amendment's ban on prosecutions for infamous offenses save on presentment or indictment of a grand jury.[2] Additionally, she points to proof variances occurring at trial, and insists that there was a resulting possibility of prejudice to her right to a fair trial. We find the first argument unpersuasive, and accordingly affirm the convictions on three of the counts.[3] And with an identical sentencing disposition made by the District Court on all counts, we decline to address the troublesome problems generated by appellant's second claim, and simply vacate the convictions on the two counts remaining.[4]

I

Appellant was employed as a secretary in the Office of Coastal Zone Management of the National Oceanic and Atmospheric Administration, a division of the Department of Commerce. As one of her responsibilities, she typed travel forms to enable other employees to obtain cash advances prior to embarking on business-related trips. The Government's evidence depicted appellant as a recipient of some of that cash by resort to a relatively simple technique. After a form had been signed by an employee and approved by a supervisor, appellant "whited out" the amount requested on the form and substituted a larger figure. When, after further processing, the monies were disbursed, she gave the employee the sum actually sought and pocketed the difference.

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. Joint Appendix (J. App.) 59, 60. The prosecution was based on 18 U.S.C. § 495 (1976).

2. See U.S.Const. amend. 5.

3. Discussed in Part II *infra.*

4. Discussed in Part III *infra.*

The indictment, as originally drawn, charged false alteration in ten counts, varying as to employees' names and amounts involved.[5] After the jury was impaneled but before the trial proceeded further, two counts were dismissed on the Government's motion.[6] The Government then moved to amend the other eight counts to rectify what it termed "typographical errors."[7] Travel forms mentioned in the indictment were uniformly identified at the head of the indictment and in each count as "United States Department of Commerce Application and Account for Advance of Funds Form 1080."[8] The form number was actually 1038[9] and, over defense counsel's objection, the District Court allowed corrections of the form number from 1080 to 1038 throughout the indictment.[10]

The Government also sought two further amendments. Count two alleged that appellant altered the amount requested on one form from $150 to $200, and thereby reaped $50 for herself.[11] The Government represented to the District Court that the evidence produced before the grand jury, however, had shown that the change was actually from $150 to $300.[12] The court denied the motion to amend count two in this fashion.[13] Nonetheless, later at trial the Government put in evidence featuring the same version the proposed amendment would have.[14]

Additionally, count five—assertedly because of the mistaken testimony of a witness before the grand jury[15]—charged alteration of the amount sought on another form from $200 to $300.[16] The Government argued that this count should be amended to state the true fact, which it said was a change from $250 to $300.[17] The court denied this motion also.[18] Perhaps surprisingly, the Government's witness testified at trial, just as he had before the grand jury, that the amount of the request before its alteration was $200.[19] As previously indicated, the jury returned verdicts of guilt on five of the counts.[20]

## II

The claim that the amendments correcting the form number were taboo is bottomed primarily on *Ex Parte Bain*,[21] an early Supreme Court treatment of the propriety of amending indictments and still a principal authority on that subject. Bain had been charged with making false statements "with intent to deceive *the Comptroller of the Currency and* the agent appointed to examine the affairs of [an] association."[22] The indictment was later amended by striking out the words italicized.[23] Adverting to the historical role of the grand jury as an institutional bulwark safeguarding citizens from unfounded accusations

---

**5.** J. App. 4–10.

**6.** J. App. 11–12. The indictment was retyped and the remaining eight counts were renumbered. J. App. 11. We refer to counts by the numbers respectively assigned in the indictment as so revised.

**7.** J. App. 12.

**8.** J. App. 4–7.

**9.** J. App. 12. The record is crystal clear on this point.

**10.** J. App. 4–7, 42.

**11.** J. App. 4–5.

**12.** J. App. 23–24, 43–44.

**13.** J. App. 42–43.

**14.** J. App. 49–52.

**15.** J. App. 24.

**16.** J. App. 5.

**17.** See J. App. 58.

**18.** J. App. 42–43.

**19.** J. App. 54–56.

**20.** They were counts one through five, the jury acquitting on counts six through eight. J. App. 59. On each of the five counts on which appellant was convicted, the court suspended imposition of sentence and placed her on probation for three years on condition that she make restitution. J. App. 60.

**21.** 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

**22.** *Id.* at 4, 7 S.Ct. at 783, 30 L.Ed. at 850.

**23.** *Id.* at 5, 7 S.Ct. at 783, 30 L.Ed. at 850.

and oppressive exercises of governmental power,[24] the Court held that the Fifth Amendment forbade trial on the charge as amended.[25] *Bain* heads a long line of decisions curbing judicial power to amend indictments.[26]

Despite the categorical nature of the doctrine espoused by *Bain* and its progeny, the courts generally have not given it strict application in cases involving only minor clerical errors.[27] It has been held, for example, that the court may permit an amendment to correct a misnomer[28] or a specification of the wrong offense date.[29] Similarly, courts have allowed modification of the description of an illegally-possessed weapon from a "30–30 caliber revolver" to a "30–30 caliber rifle,"[30] and in the denomination of a counterfeit bill from $20 to $10.[31] Amendments of that sort have usually been upheld[32] because, unlike the one in *Bain*,[33] the substance of the charge was left totally unaffected, and the prerogative of the grand jury was not usurped one whit.[34] As the Supreme Court has itself assessed the situation, "the settled rule in

24. *Id.* at 11, 7 S.Ct. at 786, 30 L.Ed. at 852. See also *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569, 580 (1962); *Stirone v. United States*, 361 U.S. 212, 218 n. 18, 80 S.Ct. 270, 273 n. 18, 4 L.Ed.2d 252, 257 n. 18 (1960); *Gaither v. United States*, 134 U.S. App.D.C. 154, 159–160, 413 F.2d 1061, 1066–1067 (1969).

25. *Ex Parte Bain, supra* note 21, 121 U.S. at 13, 7 S.Ct. at 787–788, 30 L.Ed. at 853.

26. *E. g., Stirone v. United States, supra* note 24, 361 U.S. at 215–217, 80 S.Ct. at 272–273, 4 L.Ed.2d at 255–257; *United States v. Norris*, 281 U.S. 619, 622, 50 S.Ct. 424, 425, 74 L.Ed. 1076, 1077 (1930); *United States v. Robinson*, 154 U.S.App.D.C. 265, 274 n. 26, 475 F.2d 376, 385 n. 26 (1973); *Gaither v. United States, supra* note 24, 134 U.S.App.D.C. at 159–160, 164–165, 413 F.2d at 1066–1067, 1071–1072. See also *Russell v. United States*, 369 U.S. 749, 770–771, 82 S.Ct. 1038, 1050–1051, 8 L.Ed.2d 240, 254–255 (1962).

27. E. g., *United States v. Hall*, 536 F.2d 313, 319 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976) ("[t]hrough the years the *Bain* case has become less absolute in its effect").

28. *United States v. McGrath*, 558 F.2d 1102, 1105 (2d Cir. 1977), *cert. denied*, 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978) (name of employer); *Williams v. United States*, 179 F.2d 656, 659–660 (5th Cir. 1950), *aff'd*, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951) (name of employer-codefendant); *United States v. Denny*, 165 F.2d 668, 670 (7th Cir. 1947), *cert. denied*, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948) (name of accused). See also *Dye v. Sacks*, 279 F.2d 834, 837 (6th Cir. 1960) (name of victim).

29. *United States v. Zambito*, 315 F.2d 266, 269 (4th Cir.), *cert. denied*, 373 U.S. 924, 83 S.Ct. 1524, 10 L.Ed.2d 423 (1963); *Stewart v. United States*, 395 F.2d 484, 487–489 (8th Cir. 1968); *United States v. Akers*, 542 F.2d 770, 772 (9th Cir. 1976), *cert. denied*, 430 U.S. 908, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977). See also *Lucas v. United States*, 88 U.S.App.D.C. 160, 161, 188 F.2d 627, 628 (1951).

30. *United States v. Powers*, 572 F.2d 146, 152 (8th Cir. 1978).

31. *Heisler v. United States*, 394 F.2d 692 (9th Cir.), *cert. denied*, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968). Compare *United States v. Neff*, 525 F.2d 361, 363 (8th Cir. 1965).

32. See also *Ford v. United States*, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793, 798 (1927); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.), *cert. denied*, 400 U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970); *United States v. Skelley*, 501 F.2d 447, 452–454 (7th Cir.), *cert. denied*, 419 U.S. 1051, 95 S.Ct. 629, 42 L.Ed.2d 647 (1974); *United States v. Horton*, 562 F.2d 529 (8th Cir. 1977); *United States v. Hall, supra* note 27, 536 F.2d at 318–320. The cases are not, however, completely harmonious. See, e. g., *Carney v. United States*, 163 F.2d 784, 788–790 (9th Cir.), *cert. denied*, 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400 (1947), questioned in *United States v. Dawson*, 516 F.2d 796, 802–803 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975).

33. Had the amended indictment been upheld in *Bain*, the accused could have been convicted and sentenced without any proof that he intended to deceive the Comptroller of the Currency. See text *supra* at notes 22–23. That ingredient of the original charge, however, might have been of importance in the minds of one or more of the grand jurors when they voted to indict. *Ex Parte Bain, supra* note 25, 121 U.S. at 10, 7 S.Ct. at 786, 30 L.Ed. at 852. See also *Stirone v. United States, supra* note 24, 361 U.S. at 217, 80 S.Ct. at 273, 4 L.Ed.2d at 256–257.

34. See *United States v. Denny, supra* note 28, 165 F.2d at 670. Cf. *United States v. Krepper*, 159 F.2d 958, 970 (3d Cir. 1946), *cert. denied*, 330 U.S. 824, 67 S.Ct. 865, 91 L.Ed. 1275 (1949).

the federal courts that an indictment may not be amended except by resubmission to the grand jury" is qualified when "the change is merely a matter of form."[35]

The case before us falls squarely within the exception carved out for "matter[s] of form." The indictment was amended merely to correct a clerical error plainly insignificant in nature. The number of the form was not an essential element of the offense that was uniformly charged in each count,[36] and the forms themselves were identified unmistakably by description at every mention in the counts upon which appellant stood trial.[37] The right number, which appeared on at least one of the copies of the form supplied to appellant's counsel during discovery,[38] and there is not the slightest suggestion in the record that appellant was misled by the miscue in the indictment. Equally importantly, the charge that the grand jury decided upon remained intact after the numerical corrections were made. We intend no pun when we express our considered view that the simple exchange of form numbers was no more than "a matter of form," treading not the slightest on the province of the grand jury,[39] and we hold that the amendments accomplishing it were properly allowed.

## III

Appellant's second contention presents greater difficulty. She argues that variances between the allegations of counts two and five and the trial evidence on those counts amounted to constructive amendments of the indictment.[40] Alternatively, appellant claims that those infirmities deprived her of adequate notice of the two charges, and subjected her to a possibility of prejudice in contravention of her right to due process.

We cannot justify an undertaking to address these potentially perplexing issues. We are upholding the convictions on three of the counts,[41] and the District Court granted probation identically on all five.[42] Thus, aside from an obvious drain on judicial resources, resolution of the problems appellant poses—whatever it might turn out to be—could have no practical effect whatsoever. Neither appellant, the Government nor the citizenry generally would be appreciably better off by adjudications on the validity of the convictions on counts two and five. On the other hand, "[s]ound doctrine supports the vacating of a judgment on a count that has become su-

**35.** *Russell v. United States, supra* note 26, 369 U.S. at 770, 82 S.Ct. at 1050, 8 L.Ed.2d at 255. See also *Stirone v. United States, supra* note 24, 361 U.S. at 217, 80 S.Ct. at 273, 4 L.Ed.2d at 256–257 ("trivial, useless [ ]or innocuous" matter); *Ford v. United States, supra* note 32, 373 U.S. at 602, 47 S.Ct. at 534, 71 L.Ed. at 798 ("useless averment"); *Dye v. Sacks, supra* note 28, 279 F.2d at 837 ("a matter of form and not of substance"); *United States v. Dawson, supra* note 32, 516 F.2d at 801 ("a matter of form").

**36.** See 18 U.S.C. § 495 (1976).

**37.** See text *supra* at note 8.

**38.** J. App. 15.

**39.** The case at bar is readily distinguishable from *Gaither v. United States, supra* note 24. There the parties accused were tried on an indictment drawn up by the United States Attorney's office after a grand jury voted to charge them with grand larceny. The foreman was the only member of the grand jury to actually see and approve the specifics of the written charges. We held this procedure defective and subject to the flat rule requiring dismissal of any indictment not found by twelve grand jurors. *Gaither* thus was a case in which there was no grand jury indictment in the legal sense. Here, contrastingly, the changes in the form number brought about no deviation in substance from what the grand jury decided to charge.

**40.** The Government's evidence on count two differed materially from the specifics of the offense as charged therein. And while the Government's trial evidence concurred with count five's allegations that the alteration charged therein was from $200 to $300, the parties entered into a stipulation that the change was actually from $250 to $300. Trial Transcript 303 (Apr. 6, 1979).

**41.** See Part II *supra*.

**42.** J. App. 60; see note 20 *supra*.

perfluous;"[43] and we can remove the questioned convictions on counts two and five from appellant's record simply by vacating them, and yet not adversely affect any public need. The jury's verdict on those counts would in practical effect only be suspended, and certainly not destroyed; and if at some later date the interests of justice should require, the probationary terms levied on those counts could be reimposed concurrently, and another appeal taken therefrom.[44]

As in prior cases, then, "[w]e see no reason to devote our time and energies to the research, and opinion-writing, incident to appropriate determination of an issue not governed by controlling precedent when no present public interest or need is furthered thereby."[45] Rather, we remain of the view that "[i]t better serves the general interest of the administration of justice if the court limits its resources to the determination of those questions and cases that must be decided."[46] In sum, no less here than elsewhere we think a vacatur "does not impair any need of the government, avoids the possibility of adverse collateral consequences to [appellant], and furthers the general interest of the administration of justice."[47]

The convictions on counts one, three and four of the indictment are affirmed. The convictions on counts two and five are vacated.

*So ordered.*

---

**43.** *United States v. Hooper,* 139 U.S.App.D.C. 171, 173, 432 F.2d 604, 606 (1970).

**44.** Id. at 173 n.8, 432 F.2d at 606 n.8; *United States v. Caldwell,* 178 U.S.App.D.C. 20, 54, 543 F.2d 1333, 1367 (1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976).

**45.** *United States v. Hooper, supra* note 43, 139 U.S.App.D.C. at 173, 432 F.2d at 606.

**46.** *Id.*

**47.** *Id.* (footnote omitted). Compare *United States v. Caldwell, supra* note 44, 178 U.S.App.D.C. at 54, 543 F.2d at 1367; *United States v. Greene,* 160 U.S.App.D.C. 21, 34, 489 F.2d 1145, 1158 (1973); *United States v. Hill,* 152 U.S.App.D.C. 213, 218, 470 F.2d 361, 366 (1972); *United States v. Harrison,* 149 U.S.App. D.C. 123, 126, 461 F.2d 1209, 1212 (1972); *United States v. Bobbitt,* 146 U.S.App.D.C. 224, 232–233, 450 F.2d 685, 693–694 (1971).