### UNITED STATES of America

v.

### Emmanuel DURANT, Appellant.

### No. 80–1919.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 27, 1981.

Decided April 9, 1981.

---

748

John J. Hurley, Washington, D. C. (appointed by this Court), for appellant.

Karen J. Krug, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., on brief, for appellee.

Before McGOWAN, Chief Judge, ROBINSON, Circuit Judge, and PARKER *, United States District Judge for the District of Columbia.

Opinion for the Court filed by District Judge PARKER.

BARRINGTON D. PARKER, District Judge:

Appellant Emmanuel Durant was convicted at a jury trial of one count of unlawful possession of a dangerous drug, phenmetrazine, D.C.Code § 33–702, and two counts of carrying a pistol without a license, D.C. Code §§ 22–3204.[1] He was sentenced to

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a).

1. In the original indictment, Durant was charged with two federal criminal offenses, unlawful possession of a controlled substance

concurrent terms of six months on each of the three guilty counts. The drugs and firearms were seized during the execution of a search warrant covering the premises of the Success Cafe, a restaurant/bar. A codefendant, Leon Thomas, was similarly charged and found guilty.

In this appeal, Durant advances the argument that the evidence was legally insufficient to prove he had possession of the drugs or the firearms and that the trial court erred in denying his several motions for a judgment of acquittal. We conclude that there was sufficient evidence to support the drug possession charge and that the trial court did not err in denying the appellant's motion. However, for the reasons to be discussed, we vacate the convictions on the unlicensed firearms possession counts.

## I.

There is virtually no dispute about the events that led to Durant's prosecution. In the early evening of February 29, 1980, several officers of the Washington, D.C. Metropolitan Police Department entered the Success Cafe, armed with a search warrant. After announcing their identity and purpose, they searched the premises, recovering a significant number of phenmetrazine tablets from several locations, two weapons and a large amount of cash.

The street value of the total amount of narcotics seized was at least $11,000. The largest number of tablets were found in an attache case located behind a safe in a secured and locked storage room. In the case were manila envelopes containing nearly one thousand phenmetrazine tablets. More drugs were uncovered elsewhere during the course of the search. Similar envelopes containing tablets were found lying open on a shelf in the locked storage room. Cash of $1,350 was found alongside the open envelopes. Behind a plywood wall in the men's room, yet easily accessible to one

familiar with the premises, was another envelope containing phenmetrazine tablets. A number of tablets were found in an envelope lodged over a door frame leading to the basement. (TR. 129–131, 135–136.)

Empty envelopes identical to those containing the narcotic contraband were recovered by the police at various places about the premises: discarded in a trash can by the bar, near the cash register, and scattered on the floor of the ladies' and men's rest rooms. A larger number of unused manila envelopes, in their original packing, were located in the locked storage room. (T.R. 138–140, 155.)

Two handguns were seized from the area behind the bar: a loaded .45 caliber weapon under the bar, in plain view to one standing behind that structure, and a loaded revolver in a drawer in the work area behind the bar. (Tr. 125–129.) No fingerprints were obtained from either the manila envelopes or the handguns.

Some twelve persons were on the premises when the police executed the warrant. Nine were identified as customers and three as employees. Of the twelve present, six were arrested: three patrons, a waitress, Leon Thomas and the appellant. However, only Thomas and Durant were indicted and prosecuted.

The codefendant Thomas was first observed behind the bar. He identified himself as the night manager. Two keys and $610 cash were recovered from him. One key unlocked a padlock to the front door, the other secured the storage door padlock. Unlike the front door key, secured on a key ring, the storage door key was loose in Thomas' pocket. (Tr. 152–153, 160–161.)

Durant was seen reclining on a small raised dance floor when the police entered. A trash can containing discarded manila envelopes was alongside of the dance floor. Like Thomas, he also had a key to the front door padlock on his person. When asked about the key following his arrest, he re-

---

with intent to distribute, 21 U.S.C. § 841(a), and possession of a firearm after a felony conviction, 18 U.S.C. § 1202(a)(1) (Appendix). He was acquitted on the drug distribution charge;

in a bench trial following discharge of the jury, he was acquitted of the convicted-felon firearms counts.

sponded that he worked on and off at the Success Cafe, opened and closed the place at times and occasionally cleaned up. (Tr. 154, 161–162.) Durant also claimed ownership of $240 cash found in a cowboy hat near the area of his arrest. However, he later denied ownership of the money. (Tr. 214.)

In addition to the testimony and evidence relating to execution of the search warrant, the jury heard testimony from a number of officers covering their prior observations within and about the Success Cafe, as well as concerning Durant's activities in connection with it. Three testified that the bar is located in an area of heavy drug traffic. (Tr. 158–159, 253, 256.) An officer, Darron Adams, testified that he had made a number of undercover narcotics purchases inside the Success Cafe. (Tr. 256.) Several officers testified that Durant was frequently seen about the premises. Officer Allan Penberg, who led the search warrant detail, had seen appellant there in excess of a dozen times in the year prior to his arrest. On these occasions, he testified that Durant was usually behind and around the bar, in the area leading to the locked storage room and near the entrance thereto. (Tr. 164–165.) Officer Adams had seen the appellant on the premises on numerous occasions, had seen him attending and servicing the bar and in non-public areas of the cafe. (Tr. 261–262.) Officer Sanchez-Serral also testified that he had frequently seen Durant in the Success Cafe. Many times appellant was behind the bar, and although not bartending, he was tending to bar affairs, and otherwise exercising some authority. Less than three weeks before the search and arrest, Sanchez-Serral witnessed appellant leaving the Success Cafe after closing hours. When it appeared that he saw the officer's car, however, Durant immediately stepped back, unlocked the door and reentered. (Tr. 207–210.)

Codefendant Thomas was the only defense witness. He had only recently arrived in Washington, D.C. from Michigan. He immediately sought employment and was hired soon after at the Success Cafe.

He worked only five days, however, before it was forced to close temporarily for certain plumbing repairs. The bar reopened the night of the search. According to Thomas, he was then serving in a manager-trainee capacity. (Tr. 296–323.)

## II.

A motion for a judgment of acquittal " 'must be granted when the evidence, viewed in light most favorable to the Government, is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime.' " *United States v. Staten*, 581 F.2d 878, 882 (D.C.Cir.1978)[2], *Accord, United States v. Herron*, 567 F.2d 510, 514 (D.C. Cir.1977). The circuit panel in *Staten* further amplified and explained:

That guilt must be established beyond a reasonable doubt is " 'a basic principle in our jurisprudence,' " and unless that result is possible on the evidence, " 'the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence.' " But, as quite recently we re-emphasized, " '[i]t is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury.' " And "*[i]n applying this standard no legal distinction is made between circumstantial and direct evidence.*" (emphasis added) (footnote citations omitted).

Possession of the narcotic drugs or the handguns are essential elements of the offenses for which Durant was convicted. Since he did not have actual possession of either at the time of the search or when they were recovered, we must determine whether there was sufficient evidence for a jury to find that he had constructive possession of the items. The answer to the question is not simple or easy but it may be resolved with use of appropriate guidelines together with an analysis and review of the relevant facts.

**2.** Quoting *United States v. Austin*, 382 F.2d 129, 138 (D.C.Cir.1967).

## A. The Phenmetrazine

As we have stated, to establish constructive possession of the phenmetrazine:

> It ... is unnecessary to show that the accused had the drug on his person or within his immediate reach, it is enough that he "was knowingly in a position or had the right to exercise dominion and control over" it, either directly or through others. Possession in that sense suffices though it is jointly shared, and it may be established by circumstantial as well as direct evidence. (citations omitted).

*Staten*, 581 F.2d at 883. Only recently, in *United States v. Pardo*, 636 F.2d 535 at 549 (D.C.Cir.1980), we commented further on the concept of constructive possession and noted:

> In short, there must be something more than mere presence at the scene [of the arrest]. There must be some action, some word, or some conduct that links the individual to the narcotics and indicates that he had a stake in them, some power over them. There must be something to prove that the individual was not merely an innocent bystander.

We upheld the conviction of one appellant, Mendoza, but reversed the conviction of a second—Pardo—for possession of cocaine, concluding that the evidence was insufficient to support the guilty verdict. Both appellants and other persons were present when a Drug enforcement agent purchased the cocaine. The narcotic, however, was produced in a paper bag by a third defendant and its contents were not visible to either Pardo or Mendoza. No one acknowledged that the bag contained cocaine, only that in it was "the stuff." The agent involved had not dealt with Pardo or Mendoza in arranging the sale, nor had he ever even seen either before the transaction. Pardo made no statement nor indicated in any manner that he was aware of what was actually transpiring or that a drug transaction had been consummated. In contrast, Mendoza answered the agent's questions about the drugs. Thus sufficient evidence was found linking Mendoza to the cocaine and permitting the jury to infer that he was in a position to exercise control over it.

Here Durant's relationship to the Success Cafe provides the evidence linking him to the phenmetrazine found on the premises. When arrested, he had a key to the front door of the Success Cafe on his person. He acknowledged that he worked in the establishment. Three officers testified that they had seen him numerous times in the nonpublic areas of the bar, bartending, exercising authority, and otherwise attending to the business of the Cafe. He had also been seen leaving from and locking up the premises after business hours. Leon Thomas, the only other person present with any authority, testified that he was only a trainee at the time of his arrest. We cannot say that this testimony was so insufficient and incredible that a jury could not reasonably infer and find that Durant had complete access to the premises; that in fact he was in charge of the bar on the night of the police search and at other times; and that he had knowledge that drugs were on the premises at the time of the search.

The discarded manila envelopes littered throughout the premises indicate that the Success Cafe was the site of a drug dealing operation. A number of these envelopes were found in the trash can near Durant when he was arrested, suggesting that he was conducting the phenmetrazine transactions. Although the jury rejected this inference,[3] the evidence was available for it to use in inferring that appellant had the requisite control over the drugs to be in possession under D.C.Code § 33–702. The evidence did not show that Durant was an innocent bystander at the Success Cafe, but that he was knowingly in a position to exercise control over the drugs. We hold that based on the evidence and the circumstances presented, the jurors could find beyond a reasonable doubt that Durant had constructive possession of the dangerous drugs.

---

**3.** Appellant was acquitted on the drug distribution charge. *See* note 1 *supra* at 1. We do not consider whether this evidence would be sufficient to support a conviction on that charge.

## B. The Weapons

■ To establish possession of an unlicensed weapon the government was required to establish beyond a reasonable doubt that the appellant carried the guns "either openly or concealed about his person." D.C.Code § 22–3204. The possessory element of this statute had been interpreted to mean "in such proximity to the person as to be convenient of access and within reach." *Brown v. United States*, 30 F.2d 474, 475 (D.C.Cir.1929). In this case there is no dispute that appellant was on the dance floor rather than behind the bar at the time of his arrest. This distance between appellant and the weapons raises a serious question as to whether he had the requisite access to the weapons to violate the statute.

We see no reason to reach the merits of this issue. The sentences imposed for the two firearms convictions are identical and run concurrently with the drug possession sentence; thus a ruling on this issue would have no practical effect on the appellant. Since no public interest would be served by our undertaking an examination of this question, the drain on judicial resources that would result from resolving this problem is an unnecessary one. Rather, in light of their superfluous nature, these convictions should be vacated. *United States v. Hooper*, 432 F.2d 604, 606 (D.C.Cir.1970).

The conviction for possession of the dangerous drugs is affirmed. The convictions for possession of the unlicensed firearms are vacated.