UNITED STATES of America,
Plaintiff-Appellee,

v.

Pablo Vincent MONTOYA,
Defendant-Appellant.

No. 80–2329.

United States Court of Appeals,
Tenth Circuit.

April 26, 1982.

this subsection." 5 U.S.C. § 552(b).

Tova Indritz, Asst. Federal Public Defender, Albuquerque, N. M. (R. Raymond Twohig, Jr., Asst. Federal Public Defender, Albuquerque, N. M., on the brief), for defendant-appellant.

James F. Blackmer, Asst. U. S. Atty., Albuquerque, N. M. (R. E. Thompson, U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellee.

Before SETH, SEYMOUR and PECK,* Circuit Judges.

SEYMOUR, Circuit Judge.

Pablo Montoya appeals convictions on offenses charged under a multiple count indictment generated by his assault of a Federal law enforcement officer. Montoya asserts the trial judge erroneously refused to instruct the jury on certain defense theories and improperly denied a motion for acquittal on two of the counts. We find these claims devoid of merit and affirm the judgment of the district court.

* Honorable John W. Peck of the Sixth Circuit.

## I.

An ill-starred "drug bust" provides the factual framework for evaluating Montoya's appeal. A synopsis of that incident can be culled from the trial record properly considered in a light most favorable to the prosecution. *See United States v. Morris*, 612 F.2d 483, 492 (10th Cir. 1979).

The United States Drug Enforcement Administration (DEA) orchestrated a narcotics purchase in Albuquerque, New Mexico during August 1980. Pursuant to a previous arrangement, a DEA undercover agent and a confidential informant drove to a street corner rendezvous with a suspected drug trafficker. The agent delivered $1,000 to the suspect who agreed to return promptly with the contraband. For reasons doubtlessly familiar to denizens of his trade, the suspect failed to reappear.

The agent soon guessed that he had been duped. Attempting to salvage the operation, the informant drove the agent to an Albuquerque residence outside which the suspect, two other men, and defendant Montoya were engaged in conversation. The agent called the suspect over to the automobile and sought an explanation for the latter's failure to produce $1000-worth of drugs. The suspect claimed that the drug transaction aborted because of a police raid where authorities had seized the agent's $1,000.

At this impasse, the DEA agent exited the vehicle and loudly accused the suspect of lying. The agent testified that he behaved in such a fashion because he "had to act the way a normal, say, heroin addict would act if he was under those conditions." Rec., vol. III, at 66. The agent directed no threatening gestures or remarks toward Montoya or anyone else who was present.

Defendant Montoya then intervened. Montoya was brandishing a section of bent cardboard partially concealing a smooth, blue-barreled object that the agent perceived to be a rifle or a shotgun. Montoya came within four feet of the undercover agent and pointed the cardboard covered item at the officer's midsection. Obviously upset, Montoya accused the agent of involvement with the police, ominously adding that "those bills [the $1,000] better not be marked." Rec., vol. III, at 69.

The agent, defendant Montoya, and others present at the scene then proceeded to a nearby park to discuss the matter further. Back-up law enforcement personnel arrived shortly thereafter and arrested the group en masse. A loaded sawed-off shotgun was discovered beneath the front seat of the automobile in which Montoya had been riding.

## II.

Montoya was indicted on four criminal counts as a result of this incident: (1) assault by dangerous weapon on a federal law enforcement agent performing official duties in violation of 18 U.S.C. § 111; (2) possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); (3) possession of a firearm not identified by serial number in violation of 26 U.S.C. § 5861(i); and (4) possession of a firearm that has moved interstate by one previously convicted of a felony in violation of 18 U.S.C.App. § 1202(a). Montoya was found guilty on all counts following a jury trial. He was sentenced on each count, with the sentences to run concurrently.

Montoya appeals the verdicts against him on two grounds. First, he contends that the trial judge committed prejudicial error by refusing to instruct the jury on his two defense theories. Montoya argues the judge was required to give a "missing witness" instruction to inform the jury that it could draw negative inferences as a result of the prosecution's failure to offer testimony from the confidential informant. He also urges as error the judge's failure to instruct the jury on his theory of self defense. Second, Montoya claims that his motion for acquittal should have been granted on the counts relating to the lack of serial number on the firearm and possession by a felon.

## III.

### Instructions

The missing witness instruction unsuccessfully sought by Montoya charged:

"If it is peculiarly within the power of either the prosecution or the defense to produce a witness who could give material testimony on an issue in the case, *failure to call that witness may give rise to an inference that his testimony would be unfavorable* to that party. *However, no such conclusion should be drawn . . . with regard to a witness who is equally available to both parties. . . .*"

Rec., vol. I at 34 (emphasis added). 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 17.19 (3d ed. 1977). Montoya complains that the requested instruction was required because the prosecution failed to present testimony from the confidential informant who witnessed the assault.

■ Several principles define this court's review of Montoya's missing witness argument. First, the decision to refuse such an instruction rests necessarily within the trial judge's discretion. *United States v. Bautista*, 509 F.2d 675, 678 (9th Cir.) *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). Second, such an instruction is not warranted unless it is solely within the prosecution's power to call the witness to testify. *See generally United States v. Higginbotham*, 451 F.2d 1283, 1286 (8th Cir. 1971). Third, the prosecution is not under a duty to have its informant present at trial; the prosecution is bound only to give reasonable assistance to the defense in locating that prospective witness. *United States v. Fancutt*, 491 F.2d 312, 314 (10th Cir. 1974). *See also United States v. Hayes*, 477 F.2d 868, 871 (10th Cir. 1973).

■ The trial judge's refusal to instruct the jury on missing witness inferences was proper in this case under the standards noted above. When the issue arose, the judge held a hearing at which evidence was presented regarding the ability of the prosecution and the defense to contact the informant. Both sides knew the informant worked at a mortuary in Las Vegas, New Mexico, and the evidence established that he was still there the week before the trial. A private investigator for the defense visited that workplace at least two months before trial, ascertained that informant's home address was unknown, and left a card instructing the contemplated witness to contact defense counsel. In a subsequent telephone call to the mortuary, the investigator learned that the message had been delivered to the informant. However, the informant failed to respond. Nonetheless, no other attempts to meet or subpoena the informant were made by the defense, and the Government was not asked for assistance in locating the informant. After hearing the evidence, the judge held that the witness was not peculiarly within the power of the prosecution but was equally available to both sides. On this record, we cannot say the court abused its discretion in refusing Montoya's request for a "missing witness" instruction.

■ Montoya also proposed a self defense instruction which was rejected by the trial judge. A defendant who assaults a federal law officer, unaware of the latter's status and reasonably believing himself to be acting in a protective posture, may be entitled to a self defense instruction. *See United States v. Corrigan*, 548 F.2d 879, 883 (10th Cir. 1977). However, such an instruction is properly refused where there is insufficient evidence to support the self defense theory. *See United States v. Linn*, 438 F.2d 456, 460 (10th Cir. 1971).

■ The trial judge correctly declined to tender Montoya's suggested self defense instruction to the jury because it was unwarranted by the evidence. The undercover agent did no more than loudly accuse a suspected drug trafficker of lying; no testimony indicated that the agent verbally or physically threatened Montoya or anyone else present at the scene. Montoya's remarks regarding police involvement suggest that his aggressive conduct was, in fact, motivated by concerns unrelated to self preservation. We therefore reject Montoya's assertion of prejudicial error on this point.

## IV.

### Concurrent Sentence Doctrine

Montoya argues that judgment of acquittal was improperly denied on counts III and

IV. The prosecution, however, invites us to summarily affirm Montoya's convictions on these two counts through application of the concurrent sentence doctrine. The doctrine has been applied where a defendant receives concurrent sentences on plural counts of an indictment and at least one of the convictions is sustained by an appellate court. That is the situation here since our conclusions in parts II and III *supra* require affirmance of the convictions under counts I and II, and Montoya's separate sentences on the four counts are to be served concurrently. The prosecution argues that we need not pass upon the validity of Montoya's convictions on counts III and IV because a ruling in his favor would not reduce the sentence to be served under the convictions we have upheld on counts I and II. *See United States v. Bath*, 504 F.2d 456, 457 (10th Cir. 1974).

█ The concurrent sentence doctrine does not preclude this court's consideration of Montoya's acquittal arguments; it is a discretionary and not a jurisdictional bar to review of claims on appeal. *See Benton v. Maryland*, 395 U.S. 784, 789–90, 89 S.Ct. 2056, 2059–60, 23 L.Ed.2d 707 (1969); *Phelps v. Kansas Supreme Court*, 662 F.2d 649, 652 (10th Cir. 1981). Although we have declined review under the concurrent sentence doctrine in a number of cases since *Benton, see, e.g., United States v. Hines*, 564 F.2d 925, 928 (10th Cir. 1977), *cert. denied*, 434 U.S. 1022, 98 S.Ct. 748, 54 L.Ed.2d 770 (1978); *United States v. Gamble*, 541 F.2d 873, 877 (10th Cir. 1976); *Bath*, 504 F.2d at 457 (*but see* Holloway, J., dissenting, *id.* at 460–61), in other instances we have reviewed convictions under several counts despite the existence of concurrent sentences. *See, e.g., United States v. Masters*, 484 F.2d 1251, 1253 (10th Cir. 1973); *United States v. Von Roeder*, 435 F.2d 1004, 1010–11 (10th Cir. 1971), *vacated on other grounds*, 404 U.S. 67, 92 S.Ct. 326, 30 L.Ed.2d 222 (1971).

In theory, a defendant is not harmed by application of the doctrine because his concurrent sentence would not be reduced even if he were to succeed in obtaining reversal of a second or third count. But in *Benton*, the Court recognized " 'the obvious fact of life that most criminal convictions do in fact entail adverse collateral consequences.' " 395 U.S. at 790, 89 S.Ct. at 2060 (quoting *Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917 (1968)).

A growing realization that adverse collateral consequences inexorably flow from most criminal convictions has prompted both courts and commentators to criticize frequent application of the doctrine. *See generally United States v. Vargas*, 615 F.2d 952, 956–60 (2d Cir. 1980) *United States v. Warren*, 612 F.2d 887, 891–96 (5th Cir. 1980) (en banc) (Roney, Hill, Charles Clark, Fay and Vance, JJ., concurring and dissenting); Note, *The Concurrent Sentence Doctrine After Benton v. Maryland*, 7 U.C.L.A.-Alaska L.Rev. 282 (1978). Where the court is unable to say "that there is no possibility of undesirable collateral consequences ...," the Seventh Circuit has chosen to consider the validity of all the challenged counts rather than apply the concurrent sentence doctrine. *United States v. Tanner*, 471 F.2d 128, 140 (7th Cir.), *cert. denied*, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 220 (1972); *accord United States v. McLeod*, 493 F.2d 1186, 1189 (7th Cir. 1974). The Sixth Circuit has assumed the existence of adverse consequences in its refusal to apply the doctrine. *See, e.g., Gentry v. United States*, 533 F.2d 998, 1001 (6th Cir. 1976). Such adverse collateral consequences include the possible effect on parole, the application of habitual criminal statutes in those states which view each count as a separate offense, use of the unreviewed conviction for impeachment purposes in a subsequent case, stigma from conviction of certain types of crimes, and forfeiture of civil rights and employment opportunities. *See Warren*, 612 F.2d at 893.

In view of the numerous possibilities for adverse consequences, the D.C. Circuit has established the policy of applying the concurrent sentence doctrine but vacating the judgment of conviction on the additional count instead of affirming it. *See United*

*States v. Hooper,* 432 F.2d 604, 605–06 (D.C. Cir.1970). The court in *Hooper* agreed that the doctrine should be used because "[i]t better serves the general interest of the administration of justice if the court limits its resources to the determination of those questions and cases that must be decided, especially in view of the ever-mounting docket that besets this and other appellate courts." *Id.* at 606. It concluded that vacating the conviction "does not impair any need of the government, [and] avoids the possibility of adverse collateral consequences to defendant...." *Id.* (footnote omitted). Subsequent D.C. Circuit decisions have followed this practice. *See United States v. Bush,* 659 F.2d 163, 167–68 (D.C. Cir.1981); *United States v. Durant,* 648 F.2d 747, 752 (D.C.Cir.1981); *United States v. Harris,* 627 F.2d 474, 477 (D.C.Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 375, 66 L.Ed.2d 229 (1980).

Some judges in the Fifth Circuit have recently indicated a preference for the D.C. Circuit's practice of vacating the conviction on the additional counts where the concurrent sentence doctrine is applied. *See Warren,* 612 F.2d at 895. The practice was utilized to vacate a conviction in *United States v. Cardona,* 650 F.2d 54, 57–58 (5th Cir. 1981). The D.C. Circuit and the Fifth Circuit agree that if at some future time the interests of justice should require, the sentences on the vacated counts could be reinstated and an appeal taken at that time. *E.g., Bush,* 659 F.2d at 168; *Cardona,* 650 F.2d at 58.

■ We agree there is a likelihood that adverse collateral consequences will result from use of the collateral sentence doctrine where the convictions on additional counts are affirmed. However, we do not choose to follow the D.C. and emerging Fifth Circuit practice and vacate the concurrent sentences in this case because we find the issues raised by Montoya on counts III and IV to be uncomplicated. *See United States v. Hernandez,* 662 F.2d 289, 291 (5th Cir. 1981). Therefore, we decline to apply the concurrent sentence doctrine and will address the issues on the merits.

V.

### Motion for Acquittal

■ Montoya unsuccessfully moved for acquittal on counts III and IV following presentation of the evidence in this case. Regarding count III, Montoya claims he could not have violated 26 U.S.C. § 5861(i), prohibiting possession of a firearm without a serial number, because the shotgun was manufactured prior to enactment of the proscribing statute. We rejected this contention in *United States v. Berry,* 423 F.2d 142, 144 (10th Cir. 1970), with respect to 26 U.S.C. § 5861(c), which prohibits possession of a firearm made in violation of 26 U.S.C. § 5822. We said:

"The charge was possession, not making, and the possession occurred in April, 1969. Nothing in the record shows when the sawed-off shotgun was made. We find nothing in the 1968 amendments to the National Firearms Act, 82 Stat. 1227, which limits its application to weapons made after its effective date."

423 F.2d at 144. *Accord Warren v. United States,* 447 F.2d 259, 263 (9th Cir. 1971). Montoya's conviction under count III was proper.

■ Count IV charged Montoya with a violation of 18 U.S.C.App. § 1202(a)(1), which prohibits possession of a firearm by a convicted felon. Under this statute, the Government was required to prove a nexus between possession of the firearm and interstate commerce. *Scarborough v. United States,* 431 U.S. 563, 564, 97 S.Ct. 1963, 1964, 52 L.Ed.2d 582 (1977).

■ The Government proved the shotgun was manufactured out of state in the 1950's. Because the gun was sawed off after it had traveled interstate, however, Montoya argues that the Government was required to prove the gun had been in interstate commerce in its shortened condition. Such proof is unnecessary. The nexus requirement of section 1202 is minimal, *Scarborough,* 431 U.S. at 575, 97 S.Ct. at 1969, and is "met by evidence that the firearm traveled in interstate commerce *at some*

*time* prior to defendant's possession." *United States v. Laymon*, 621 F.2d 1051, 1054 (10th Cir. 1980). The Government's proof satisfied this burden under section 1201(a)(1).

The judgment below is affirmed.