**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 14, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MCKENZIE WRIGHT LECHNER,
also known as Gayla Cloud Lechner,

Defendant - Appellant.

No. 08-1385

(D. Colorado)

(D.C. No. 1:06-CR-00343-WDM-1)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **MURPHY**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Introduction

Defendant-Appellant McKenzie Wright Lechner appeals her conviction for assault with a dangerous weapon in violation of 18 U.S.C. §§ 113(a)(3) and 1153. On appeal she raises two issues: (1) the district court abused its discretion by refusing to accept her guilty plea, and (2) the district court interfered with her constitutional right to testify when it advised her of the effect of her failure to testify. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** the district court on both issues.

## II. Background

Lechner is an enrolled member of the Southern Ute Tribe and lives on the Southern Ute reservation. In April of 2006, Sequoia King and Selwyn King, Lechner's granddaughter and grandson, respectively, traveled from their home in Denver to the Southern Ute reservation near Durango, Colorado. They were accompanied by Misty Cockerham, a Denver neighbor. The purpose of the trip was for Sequoia, who had recently turned sixteen years old, to pick up a car from Lechner. Cockerham was along for the trip so she could accompany Sequoia on the drive back to Denver.

The trio had planned to stay with Lechner's son, Rendell, when they arrived. They decided the arrangements were unsuitable and so decided to stay at the hotel in the Sky Ute Casino. At the hotel Sequoia became upset because Cockerham and Selwyn took a room together and she could hear them having sex.

She called Lechner, who picked her up from the hotel and put her up for the night. Although Selwyn and Cockerham knew Lechner had picked up Sequoia, they were unable to find Sequoia the next day. They spent the day in Durango together, where they spent some of the money Selwyn's mother had given him for the trip.

That night, Selwyn and Cockerham went to Lechner's house. At the house with Lechner were her husband Gale, her son Rendell, and Sequoia. Lechner began arguing with Selwyn and slapped him. Cockerham put her hands up and attempted to get between them. Lechner's husband, Gail, grabbed Selwyn and held him against the wall. Lechner grabbed Cockerham by the hair, pulled her head down, and struck her head with her knee.[1] While Lechner held Cockerham by the hair, Cockerham tried to punch Lechner. Lechner proceeded to strike Cockerham repeatedly, empty her pockets, and yell at her. Cockerham fell to the ground and stopped trying to fight back, but the beating continued. Lechner struck Cockerham in the head and the body. Lechner delivered some of the blows with her hard-soled shoe, and also kicked Cockerham in the face. Cockerham was left bleeding on the floor of the house for several hours before being taken back to the casino. She was eventually hospitalized and treated for a broken nose and two broken vertebrae.

---

[1]Sequoia testified that Lechner had first tried to walk away from the confrontation but was punched in the back by Cockerham.

Lechner was charged with two criminal counts: (1) knowing assault with a deadly weapon with intent to do bodily harm in violation of 18 U.S.C. §§ 113(a)(3) and 1153, and (2) knowing assault resulting in serious bodily injury in violation of 18 U.S.C. §§ 113(a)(6) and 1153. Lechner signed a plea agreement whereby she agreed to plead guilty to Count II and the government agreed to dismiss Count I, not oppose a sentence of probation, and recommend a sentence at the bottom of the advisory guideline range. Lechner appeared before the district court to enter her plea of guilty. At that time, the district court questioned Lechner regarding her decision. The following exchange occurred:

> The Court: Do you understand that you are being charged with assaulting someone named Misty Cockerham?
> The Defendant: Yes.
> The Court: And that as a result, she suffered serious bodily injury?
> The Defendant: I guess.
> The Court: You don't know?
> The Defendant: Yes.
> The Court: Yes, you don't know, or yes, you acknowledge that she received serious bodily injury?
> The Defendant: I admit that I broke her nose, yes.
> The Court: And it also charges you with having knowingly assaulted her. Do you understand that; that you knew what you were doing?
> The Defendant: Well, I guess I should say yes.
> The Court: No, no. I want the truth. You are sworn to tell the truth.
> The Defendant: I didn't know at the time that I hit her.
> The Court: This isn't traffic court.
> The Defendant: I know, Your Honor.
> The Court: You are not going to be able to plead to defective muffler or something. You are charged with a serious crime.
> The Defendant: I know that, Your Honor. I understand that.
> The Court: You understand you are charged with knowing what you were doing; that you intentionally assaulted someone?

-4-

The Defendant: I did not intentionally insult [][2] her, no.

The Court: Then I don't think that I will accept your plea. We'll be in recess.

After the district court rejected her plea, Lechner went to trial. She waived a jury trial. At trial, Lechner indicated she wanted to testify. Her counsel advised the court, "I think now is a good time for the Court to advise Ms. Lechner with respect to her right to testify." The district court proceeded to advise Lechner as follows:

> The Court: Ms. Lechner, your counsel indicates that you desire to testify. And I wanted to be sure you were aware that you are given the absolute right not to be a witness by our Constitution and you have that absolute privilege. And if you chose not to testify, I won't make any inference from that whatsoever. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: Do you understand that the issue before me to be decided is not whether you are innocent. The question is whether the government has proved you guilty beyond a reasonable doubt. So I am not deciding whether you did anything right or wrong as what may or may not be your sense of right or wrong. I am only going to be deciding what the government—whether or not the government has proved you guilty beyond a reasonable doubt as to each and every element of the charges. So your failure to testify will not have any impact on my decision making whatsoever. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: But if you do choose to testify and your attorney limits the types of questions that she asks, that doesn't mean that I won't allow the government to ask questions beyond the scope of what your attorney asked. Do you understand that?

---

[2]The transcript contains the word "(sic)" at this point, most likely indicating the court reporter heard Lechner say "insult" but believed she meant to say "assault." We omit the notation because one issue on appeal involves whether the district court correctly understood Lechner's testimony.

The Defendant: Yes.

The Court: In other words, the government's attorney won't necessarily be limited to the subject matter of what your attorney asks. As long as what the government asks is relevant, if I believe it's relevant, I may require you to answer the question. Do you understand that?

The Defendant: Yes.

The Court: And do you understand that if you refuse to answer a question after I require you to do that, I may then consider your refusal or I may disregard all of your testimony. Do you understand that?

The Defendant: Yes.

The Court: Have you consulted with [counsel] whether or not you should testify? Don't tell me what she has advised you.

The Defendant: No, not really Your Honor.

The Court: You have not talked to her about it?

The Defendant: No, I have not talked to her. It was in the air.

The Court: All right. Well, then I am going to recess and I am going to ask you to discuss it fully with [counsel] before I allow you to testify.

After the recess, Lechner informed the court she no longer wished to testify.

After the close of evidence, the court returned a verdict of guilty on the count of assault with a deadly weapon, and not guilty on the count of assault resulting in serious bodily injury. Lechner was sentenced to 60 months' imprisonment, and now appeals.

## III. Discussion

### A. *Refusal to Accept Plea*

Lechner first contends the district court erred in refusing to accept her plea. She argues the district court refused her plea after she stated she did not intentionally *insult* Cockerham. Because an intent to *insult* the victim is not an

element of knowing *assault*, Lechner argues the district court had no basis to reject her plea.

When the government and a defendant reach an agreement whereby the government dismisses one charge in exchange for a plea of guilty to another charge, the district court may accept or reject the agreement. Fed. R. Crim. P. 11(c)(3)(A). Before accepting a plea of guilty, the district court must ensure the plea is voluntary and that there is a factual basis for the plea. Fed. R. Crim. P. 11(b)(2), (3). The district court's decision to accept or reject a plea is reviewed for abuse of discretion. *United States v. Young*, 45 F.3d 1405, 1414 (10th Cir. 1995).

The district court's questions of Lechner were intended to establish a factual basis for the plea and confirm the plea was voluntary. When the district court asked Lechner if she committed the assault knowingly, Lechner responded, "Well, I guess I should say yes." The district court then instructed her to tell the truth, and she denied having the requisite mens rea: "I didn't know at the time that I hit her." The district court asked her a third time whether she intentionally assaulted Cockerham, and Lechner's reply was, "I did not intentionally insult [] her, no." In light of the previous questions, it is clear Lechner intended to give a responsive answer to the question posed by the district court. The only reasonable interpretation of her statement was that she did not intend to *assault* Cockerham. It was certainly not an abuse of discretion for the district

-7-

court, which actually heard Lechner's answer and observed her demeanor while she spoke, to interpret the comment as a refusal to admit to intentional assault. In addition, Lechner had twice previously denied she had the required state of mind, further supporting the district court's decision to reject the plea based on an insufficient factual basis.

Lechner notes the signed plea agreement contained a factual recitation with all of the required elements of the crime. Because she signed the agreement and admitted to the truth of the factual recitation, Lechner argues the district court erred in finding there was no factual basis for the plea. This argument, if accepted, would prohibit a district court from inquiring further into the factual basis for a plea agreement if the written agreement contained admissions as to all the elements of the crime. Under Fed. R. Crim. P. 11(b)(3), however, the district court has a duty to "determine that there is a factual basis for the plea." As part of that duty, the district court may choose to verify, in open court, the assertions made in the written plea agreement. Here, the district court did exactly that, and Lechner refused, after repeated questioning, to admit to all the elements of the crime. Lechner's position is also inconsistent with our precedent permitting a "district court, once it has accepted a plea, to reject it after the discovery of facts inconsistent with the plea." *United States v. Moran*, 452 F.3d 1167, 1171 (10th Cir. 2006). Under these circumstances, the district court did not abuse its discretion in refusing to accept Lechner's plea.

*B. Advisement of Right to Not Testify*

Lechner also contends the district court improperly interfered with her constitutional right to testify in her own defense when it informed her of the consequences of testifying and failing to testify. In particular, she takes issue with the district court telling her, "I am only going to be deciding what the government—whether or not the government has proved you guilty beyond a reasonable doubt as to each and every element of the charges. So your failure to testify will not have any impact on my decision making whatsoever." Lechner contends this statement was legally incorrect and was a signal that the district court would reject her testimony.

Lechner contends the statement was legally incorrect because her defense was based on self-defense. Because of this, she argues, the district court was not simply deciding whether the government proved each of the elements, because even if it did so she could still be acquitted if there was a finding of self-defense. Lechner did not object to the district court's statement at trial. It is reviewed, therefore, under a plain error standard. *United States v. Taylor*, 514 F.3d 1092, 1095-96 (10th Cir. 2008). Under that standard, reversal is proper only "when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 1100.

We conclude the judge did not plainly err in giving his statement. The judge correctly stated the government bore the burden of proving Lechner's guilt beyond a reasonable doubt. When a defendant presents evidence supporting a self-defense theory, the government also bears the burden of proving the defendant did not act in self-defense. *United States v. Corrigan*, 548 F.2d 879, 883 (10th Cir. 1977).[3] Even though the district court did not explain the government also bore the burden of disproving her self-defense theory, there was no implication Lechner bore the burden of proof on this or any other issue. Any error on the part of the district court in mentioning the burden of proof without also explaining it applied to the self-defense theory was not plain.

Lechner also contends the district court's statement that the "failure to testify will not have any impact on [its] decision making whatsoever" gave her the reasonable impression her testimony would be meaningless. We reject this contention as well. The district court did *not* tell Lechner that testifying would have no impact on its decision, but stated only that her *failure* to testify would have no impact. This comment came after the district court stated, "if you chose

---

[3]It is true the government's burden to disprove a self-defense theory is only triggered when the defendant has presented evidence that, if believed, would support such a theory. *United States v. Montoya*, 676 F.2d 428, 431 (10th Cir. 1982). The district court did not address the threshold defense burden, but its failure to do so was not plain error. The district court made a finding that, even if Lechner were defending herself from aggression, she used more force than was reasonably necessary under the circumstances. Thus, the district court did not reject Lechner's self-defense theory on the grounds that she did not meet her threshold evidentiary burden.

not to testify, I won't make any inference from that whatsoever." Taken together, these statements indicate the district court was explaining it would not draw a negative inference from her failure to testify, not that it would disbelieve the substance of her testimony. As this was a correct statement of the law, the district court did not commit error, let alone plain error.

Finally, Lechner contends the entire exchange was an inappropriate interference with her decision to testify. In support, she relies on *United States v. Leggett*, 162 F.3d 237, 249 (3d Cir. 1998). *Leggett*, however, involved a very different situation. In that case, defense counsel informed the court the defendant wanted to testify against counsel's advice. *Id.* at 248. The court told the defendant to heed the advice of his attorney. *Id.* The next day, the court called the attorney to sidebar and inquired, outside of the defendant's hearing, whether the defendant would testify. *Id.* Counsel indicated he would not. *Id.* On appeal, the defendant argued the court inappropriately interfered with his decision whether or not to testify. *Id.* The Third Circuit called the court's actions "highly inappropriate," stating it "rashly injected itself into a discourse better left to the attorney and client." *Id.* at 249. It held, nonetheless, there was no reversible error because there was no evidence the defendant actually wanted to testify when his attorney told the court he did not. *Id.*

In contrast to the situation in *Leggett*, the district court here did not inject itself into a dispute between Lechner and her attorney regarding trial strategy.

The district court simply informed Lechner of her right not to testify, the government's burden of proof, and her duty to answer questions if indeed she did testify. Additionally, in sharp contrast with what happened in *Leggett*, the district court asked Lechner herself if she wanted to testify. This is not, therefore, a situation where the district court took the decision whether or not to testify away from the defendant. We conclude the district court did not impermissibly interfere with Lechner's right to testify, and therefore there was no plain error.

**IV. Conclusion**

For the foregoing reasons, the judgment of the district court is **affirmed.**

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

-12-