Mark JERVIS, Petitioner, Appellant,

v.

Frank HALL, etc., Respondent, Appellee.

No. 80–1012.

United States Court of Appeals,
First Circuit.

Submitted April 10, 1980.

Decided June 3, 1980.

Lois M. Lewis, West Newton, Mass., on brief, for petitioner, appellant.

Francis X. Bellotti, Atty. Gen., Stephen R. Delinsky, Asst. Atty. Gen., Chief, Criminal Bureau and Annette C. Benedetto, Asst. Atty. Gen., Boston, Mass., on brief, for respondent, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Petitioner appeals from the denial of his petition for habeas corpus. He argues his constitutional rights were violated by (1) the denial of his motion to sever, (2) allowance of the Commonwealth's motion to amend one of the indictments, and (3) certain evidentiary rulings.

1. *Motion to sever*

Two indictments, one charging assault with intent to murder and the other, larceny of a motor vehicle belonging to Richard Petrillo, were returned against petitioner. On the assault indictment, the jury found the petitioner guilty of the lesser included offense of assault with intent to kill, and it returned a guilty verdict on the larceny indictment. Petitioner was sentenced to a term of 8 to 10 years on the assault and 4 to 7 years on the larceny, the latter to take effect from and after the expiration of the assault sentence. Petitioner's convictions were affirmed on appeal. *Commonwealth v. Jervis*, 368 Mass. 638, 335 N.E.2d 356 (1975).

█ The state trial court, while noting that on the face of the indictments the crimes appeared to be unrelated, permitted the offenses to be tried together upon the district attorney's representation of a substantial overlap in the evidence on both charges.[1] The evidence at trial was basically as follows. Richard Petrillo testified that he discovered his light *beige* or *tan* Volkswagen missing on July 15, 1972. Several weeks later when he recovered his car from the police, he found the ignition had

been removed. Linda Shelton, the victim of the assault, testified that petitioner drove up to her apartment on the night of either July 18 or 19, 1972 in a light *blue* Volkswagen, a car she had never seen petitioner drive before. Petitioner informed her that her baby (there was evidence that the father of the baby was petitioner's brother) had been adopted, and told her to get in the car because he had to talk to her. She complied, and petitioner started the car by inserting a screwdriver into the ignition. He gave her eight little white pills to calm her down and eventually drove to a narrow wooded road in Medford. Linda's last memory of that evening is lying on a blanket in the woods watching petitioner drink Black Label beer; she has no memory of being assaulted. She was discovered unconscious in the woods with a gash in her skull and bruises on her body on the afternoon of July 20, 1972. The police recovered a blanket and two cans of Black Label beer nearby. Linda was hospitalized and remained so for close to two months. At first she had no memory of what had happened, but one day within a few weeks of the incident she suddenly remembered the events of the evening of July 18 or 19 as recounted above and informed the police. Shortly thereafter, on August 5, 1972, petitioner was arrested. After being informed of his *Miranda* rights, he stated, in response to a question from the police, that the Volkswagen parked on the corner near the house in which petitioner was arrested was his and that he had had the car approximately two weeks. Petrillo's license plates were found inside the car, and the car was eventually returned to him.

Thus, as the Commonwealth had represented to the trial court, there was an overlap in the evidence used to prove the two offenses. Linda Shelton, the Commonwealth's principal witness on the assault charge, provided some evidence linking petitioner with the stolen Volkswagen in her narrative of the evening of the assault.

---

1. The prosecution represented to the trial court as follows:

"[T]he entire evidence I will be introducing, where I try the larceny of the motor vehicle case, would go in this case to produce the substantive elements it was the defendant on the armed assault and murder."

From her testimony, particularly the manner in which the Volkswagen was started, it could be concluded petitioner was in the possession of a stolen Volkswagen on July 18 or 19, just several days after its theft.[2]

Conversely, evidence of the larceny was relevant to proving the assault charge. In statements petitioner made to the police he denied he had seen Linda Shelton on the night of the assault or at any time prior to a week and a half or so before it. If petitioner were correct, then it is unlikely Linda would have known of his possession of the Volkswagen for it had not yet been stolen at the time petitioner claimed to have last seen Linda. It was this very detail—the type of car petitioner was driving—which both corroborated her version of events and contradicted petitioner's. True, whether petitioner possessed the Volkswagen lawfully or unlawfully on the evening of the assault was, in the first instance, irrelevant; however, establishing that petitioner did not have the Volkswagen at the time he claimed to have last seen Linda was important and this, we think, under the circumstances, could properly be shown by evidence that it was not stolen until a few days before the assault. Thus, had the assault been tried separately from the larceny, the prosecution could properly have introduced the evidence tending to establish that on the evening of the assault petitioner was in possession of a Volkswagen which had been stolen only a few days earlier.

It is true that much of the evidence surrounding the assault would have been irrelevant and therefore inadmissible in a separate trial on the larceny charge. That Linda Shelton was with petitioner on July 18 or 19 and saw him driving a Volkswagen with a broken ignition would have been relevant to establishing his possession of the stolen vehicle within a few days of its theft, but her subsequent assault would not have been germane. Petitioner argues that there is a danger that where, as here, two offenses are tried together and the evidence of one is not admissible on the other, a jury will use the "evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime . . ." *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964). *See also United States v. Foutz,* 540 F.2d 733, 736–39 (4th Cir. 1976); *King v. United States,* 355 F.2d 700, 704 (1st Cir. 1966).

Despite the potential prejudice, we do not think habeas corpus relief may permissibly be granted here. In *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), the Supreme Court rejected a due process attack upon the admission of past criminal conduct. Under the challenged state one-stage habitual criminal procedure, the jury trying a recidivist on a pending criminal charge was informed of his previous derelictions but was also charged by the court that such matters were relevant only on whether punishment would be enhanced and were not to be taken into account in assessing the defendant's guilt or innocence under the current indictment. *Id.,* 556, 87 S.Ct. at 649.

The Court recognized that evidence of a defendant's bad acts are not admissible to prove criminal propensity but may be admitted when probative of such matters as intent, identity, malice, motive, or the like. *Id.,* 560–61, 87 S.Ct. at 652. In the latter situations, as under the challenged state recidivist procedure, the jury learns of defendant's prior crimes "but the conceded possibility of prejudice is believed to be outweighed by the validity of the State's purpose in permitting introduction of the [prior crime] evidence." *Id.,* 561, 87 S.Ct. at 652. While the Court acknowledged that the state interest in admitting prior crime evidence to enforce the one-stage recidivist trial "may be thought to represent a less cogent state interest than does [the use of prior crime evidence] for other purposes," in that the state could accomplish the objec-

---

**2.** Linda Shelton's discrepancy in the description of the Volkswagen is not fatal considering she observed the car only at night and she may have suffered some loss of memory or confusion as a result of the assault.

tive of enhancing the punishment of habitual criminals without at the same time subjecting them to the risk that a jury would infer criminal propensity and convict them for that reason by the simple expedient of deciding punishment in a separate proceeding, the Court found no constitutional infirmity. *Id.*, 563, 87 S.Ct. at 653. The Court stated

"In the face of legitimate state purpose and the longstanding and widespread use that attend the procedure under attack here, we find it impossible to say that because of the possibility of some collateral prejudice the Texas procedure is rendered unconstitutional under the Due Process Clause as it has been interpreted and applied in our past cases."

*Id.*, 564, 87 S.Ct. at 654. Thus, in effect, the Court took the position that so long as a legitimate state purpose was served by the admission of prior-crime evidence, its admission was not subject to constitutional attack. Indeed, the Court recognized the implication a contrary decision would have on the very situation presented here—the trial of a defendant on multiple offenses. The Court stated

"To say the United States Constitution is infringed simply because this type of evidence [prior-crime evidence] may be prejudicial and limiting instructions inadequate to vitiate prejudicial effects, would make inroads into this entire complex code of state criminal evidentiary law, and would threaten other large areas of trial jurisprudence. For example, all joint trials, whether of several codefendants or of one defendant charged with multiple offenses, furnish inherent opportunities for unfairness when evidence submitted as to one crime (on which there may be an acquittal) may influence the jury as to a totally different charge. [Citations omitted.] This type of prejudicial effect is acknowledged to inhere in crimi-

nal practice, but it is justified on the grounds that (1) the jury is expected to follow instructions in limiting this evidence to its proper function, and (2) the convenience of trying different crimes against the same person, and connected crimes against different defendants, in the same trial is a valid governmental interest."

*Id.*, 562, 87 S.Ct. at 653.

Here, as in *Spencer v. Texas*, the state's interest in trying the two offenses together (and, by so doing, exposing to the jury evidence of an unrelated crime) was economy—one proceeding was substituted for two. The economy effected here was probably much greater than that achieved by the procedure challenged in *Spencer v. Texas* for the Commonwealth was saved from essentially duplicating its evidence of larceny in two separate trials. At worst, we see no greater potential for prejudice here than inhered in *Spencer v. Texas* and hence conclude petitioner's constitutional rights were not violated by the denial of his motion for severance.[3]

### 2. *Amendment of the Indictment*

■ Petitioner's constitutional rights were not violated by allowance of the Commonwealth's motion to amend the larceny indictment by changing the date of the alleged offense from August 5, 1972 to on about July 15, 1972. The August 5, 1972 date was apparently a clerical error. That was the date petitioner was arrested, not the date the Volkswagen was stolen. Petitioner, in opposing the motion, stated he was not ready to proceed on the larceny charge, but he did not seek a continuance. While trial commenced on the day the motion was granted, May 8, 1973, petitioner did not make his opening statement or call any witnesses until May 14, 1973. *Commonwealth v. Jervis*, 335 N.E.2d at 360 n.2. Petitioner does not now state he would

---

3. The court cautioned the jury to keep the evidence on each indictment separate. The court stated

"There will be a separate verdict on each of these indictments. The evidence which is applicable to each is separate and distinct.

The guilt or innocence of the defendant is decided on the evidence applicable to that indictment."

Petitioner did not object to the instruction or request any stronger language.

have conducted his defense differently if informed earlier of the correct date of the larceny, and we see no prejudice to petitioner from allowance of the amendment.

### 3. *Evidentiary Rulings*

Petitioner argues the court erred in permitting a police officer to testify to the contents of a phone call he received on July 22, 1972 from a male who identified himself as petitioner. While petitioner never precisely articulates his arguments, he appears to suggest the officer's testimony concerning the call was inadmissible because (a) there was an insufficient basis to identify the caller as petitioner, (b) *Miranda* warnings were not given to the caller, and (c) the evidence's prejudicial effect outweighed its probative value. We discuss these in order.

 a. Three days after receiving the call, the officer met with petitioner in person and talked with him for an hour. The officer testified petitioner had an unusual, high pitched voice and he was sure the earlier caller was petitioner. In addition, petitioner's wife testified she was present when petitioner made the July 22 call to the police. There was a sufficient basis for the court to conclude, as it did, that the caller was petitioner.

■ b. The officer was not required to give petitioner *Miranda* warnings. Petitioner was not in custody, he voluntarily initiated the call, and he was free to hang up at any point.

■ c. In the course of the phone call, petitioner informed the officer that Judy Hill and Linda Shelton had, on a previous occasion, accused him of threatening them with a gun. Petitioner denied he had done so and stated he did not know what Linda was trying to do to him. Judy Hill herself testified at trial to this incident which she said had happened a few weeks before Linda was found in the woods. According to her testimony, Linda and petitioner had been discussing the baby, petitioner had become angry, and he had threatened them with a gun. Petitioner's prior assault on Linda was admissible to show malice or ill will. *See Commonwealth v. Bartolini*, 299 Mass. 503, 510, 13 N.E.2d 382, 387, *cert.*

*denied*, 304 U.S. 565, 58 S.Ct. 950, 82 L.Ed. 1531 (1938) (prior assault on victim admitted to show defendant's feelings toward deceased); 2 J. Wigmore, Evidence § 396 (3d ed. 1940) ("Where an emotion of hostility at a specific time is to be shown, the existence in the same person of the same emotion at another time is in general admissible."). We see no error in admitting the contents of the phone call.

■ Petitioner also claims his cross-examination of the officer was unduly restricted. Petitioner, in an attempt to dispel the possible inference that the call to the police evidenced a guilty mind, asked the officer whether other persons had inquired after Linda. The Commonwealth objected, and the court sustained the objection. We see no due process violation. As the trial court stated, "The fact people called the station after a girl was found in the woods, unidentified for some period of time, and expressed some concern, has less than nothing to do with the guilt or innocence." Whether such a question should nonetheless have been allowed on cross-examination to offset any adverse inference from the fact of petitioner's call was, at most, a procedural issue within the province of the Massachusetts courts.

*Affirmed.*