UNITED STATES of America

v.

**Angela M. KEGLER, Appellant.**

**No. 83–1219.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1983.

Decided Dec. 30, 1983.

As Amended Jan. 31, 1984.

---

David C. Venable, Washington, D.C. (appointed by this Court), for appellant.

Daniel J. Seikaly, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Michael Farrell, Judith Hetherton and Douglas J. Behr, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before TAMM and WILKEY, Circuit Judges, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

The grand jury returned a two-count[1] indictment under 18 U.S.C. § 2314 (1976)[2] charging that Angela M. Kegler, with unlawful and fraudulent intent, caused falsely made and forged securities to be transported interstate. Jury verdicts of guilty were returned on both counts. Kegler was sentenced on Count II to a term of imprison-

---

1. COUNT ONE:

On or about December 22, 1981, ANGELA M. KEGLER with unlawful and fraudulent intent, did transport and cause to be transported in interstate commerce from the District of Columbia to Arlington, Texas, a falsely made, forged and altered security, that is, a check in the name ANGELA MATEER drawn on the account of Double J. Welding Company knowing the same to be falsely made, forged and altered.

(In violation of Title 18, U.S.Code, Section 2314)

COUNT TWO:

On or about December 23, 1981, ANGELA M. KEGLER with unlawful and fraudulent intent, did transport and cause to be transported in interstate commerce from the Dis-

trict of Columbia to Richmond, Virginia, a falsely made, forged and altered security, that is a check in the name ANGELA MATEER drawn on the account of the Perseco Company knowing the same to be falsely made, forged and altered.

(In violation of Title 18, U.S.Code, Section 2314)

2. This section provides:

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited . . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

ment of two to six years, and on Count I to a consecutive four-year term of probation.

Appellant contends that a minor amendment of both counts of the indictment which substituted the name *"Andrea* Mateer" for *"Angela* Mateer" as the payee of the two forged securities (checks) violated her Fifth Amendment right to be tried on the indictment returned by the grand jury.[3] She also contends that the evidence is insufficient to support the conviction on Count II. We find both contentions to be without merit and affirm the judgment of conviction on both counts.

## I. THE AMENDED INDICTMENT

With respect to the contention that the indictment was improperly amended, at the close of the first day at trial, the following colloquy occurred between the prosecutor, the court, and defense counsel:

MR. BEHR [PROSECUTOR]: Your Honor, if I might, I have one problem that I need to raise with the court. In reading over the indictment in my opening statement, I became aware that there appears to have been a *clerical mistake in the indictment.* It lists the name of *Angela* Mateer on the checks as opposed to *Andrea* Mateer. I would request at this time permission of the court to amend the indictment so that the correct name, as it appears on the two checks, is on the indictment.

I believe it is well within the power of the court to allow that amendment. It would be a typographical or clerical mistake on the indictment. The checks are very clearly described, and the only mistake is in the first name of the person to whom it was [they were] drawn.

Quite clearly, it has caused no problem in preparation by either defense counsel since the issue has never been raised.

MR. VAN [DEFENSE COUNSEL]: We have no objection, Your Honor.

THE COURT: All right.

MR. BEHR: Your Honor, I will have a new copy typed.

THE COURT: The indictment can be so amended.

(Tr. 112–13) (emphasis added).

In support of her contention that the change in the indictment from "Angela" to "Andrea" violated her constitutional rights under the Fifth Amendment, appellant relies principally upon *Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), and its progeny. In this 1887 decision, the Supreme Court held that whenever an indictment requires an amendment *of substance* it must be sent back for that purpose to the grand jury. The amendment at issue in *Bain* struck as surplusage the phrase "the Comptroller of the Currency" as one of the parties that the indicted bankers sought to deceive by false statements and reports. The court granted habeas corpus relief, stating that the court could not amend the indictment without presenting it again to the grand jury. *Id.* at 13, 7 S.Ct. at 787.

■ *Bain* involved a substantive amendment to the indictment, but its decisional language was very broad. In the last 100 years, the excessive strictness of some of the dicta in the Court's opinion has been tempered. It is clear that its principal holding—that any substantial direct or indirect amendment of an indictment must be resubmitted to the grand jury—continues as sound law. *Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) (*"Bain* ... stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him"); *Crosby v. United States,* 339 F.2d 743, 744 (D.C.Cir.1964) (court improperly instructed the jury on a lesser offense that was not included in the indicted offense).

■ We need not repeat the opinion in *United States v. Bush,* 659 F.2d 163 (D.C. Cir.1981), written by Judge Robinson for a unanimous panel, which cites numerous recent precedents holding that courts generally have not applied the strict language

---

**3.** The Fifth Amendment provides: "No person shall be held to answer for [an] infamous crime, unless on a presentment or indictment of a Grand Jury ...." U.S. Const. amend. V.

in *Bain* to cases involving only minor clerical errors or misnomers, where the substance of the charge is left totally unaffected and the prerogative of the grand jury is not usurped. This is such a case. Judge Robinson also pointed out in *Bush* that the settled rule in federal courts prohibits substantive amendments, but permits changes in indictments that are merely "a matter of form" or which correct insignificant clerical errors. *Id.* at 167. *Cf. Russell v. United States,* 369 U.S. 749, 762, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962). An amendment of form and not of substance occurs when the defendant is not misled in any sense, is not subjected to any added burden and is not otherwise prejudiced. *Williams v. United States,* 179 F.2d 656, 659 (5th Cir.1950), *aff'd,* 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1951).

As to what is the substance of the charge, *United States v. Denny,* 165 F.2d 668, 669 (7th Cir.1947), *cert. denied,* 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948), states: "[E]very fact which must be proved to make the act complained of a crime is matter of substance, and ... all else ... is formal." Applying this rule, the trial court in *Denny* permitted the district attorney to change the name of the defendant in the second count of an indictment from "Gordon Keith Kenny" to "Gordon Keith Denny," which was the name shown in the first count. This was merely a stenographic mistake. The court ruled that where no change of identity is involved the defect is one of form. *Id.* at 670.

In the misnomer category, courts have permitted amendments of the name of an involved employer. *Williams v. United States, supra,* 179 F.2d at 659–660 ("Lindsley Lumber Company" amended to read "Denia Supply Company, doing business as the Lindsley Lumber Company"). Another case allowing some change in the name is *United States v. Fawcett,* 115 F.2d 764 (3d Cir.1940), where an indictment against "Harry Nelson" was amended to read "Harry Nelson otherwise known as Leo Wilson." The court, relying on the then-existing harmless error rule, held that such an amendment was merely one of form. The

defendant was not prejudiced and none of his substantial rights was affected. *Id.* at 767. An amendment to allege the correct name of a robbed bank was also allowed in *United States v. Doby,* 598 F.2d 1137, 1142 (8th Cir.1979).

■ The court may amend an indictment that does not strike any portion of the charging paragraph and thus does not change the charged offense. *United States v. Craig,* 573 F.2d 455 (7th Cir.1977), *cert. denied,* 439 U.S. 820, 99 S.Ct. 83, 58 L.Ed.2d 110 (1978) (court struck part of indictment to make it conform to earlier court decision that ruled on those allegations—held not an amendment).

Thus, in *Bush, supra,* the defendant was charged with falsely amending "Form 1080" expense vouchers. The form number was a typographical error. The court permitted amending the indictment to read "Form 1038" instead of "Form 1080." 659 F.2d at 167. Other courts have permitted a wide variety of changes regarding facts which are ancillary to the offense charged: *United States v. Powers,* 572 F.2d 146, 152 (8th Cir.1978) ("30–30 caliber *revolver*" amended to a "30–30 caliber *rifle*"); *United States v. Nicosia,* 638 F.2d 970, 976 (7th Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3110, 69 L.Ed.2d 972 (1981) (typographical error—date of testimony in an obstruction of justice case—indictment amended to state correct date—"The change was immaterial to the charge. It was a mere matter of form" and defense was not prejudiced); *Jervis v. Hall,* 622 F.2d 19, 22–23 (1st Cir.1980) (clerical error, date of arrest amended to insert date of alleged offense in larceny indictment). And when an indictment is amended to drop some of the counts, it has been held permissible to retype the two counts and submit them in amended form to the jury. *United States v. Bryant,* 471 F.2d 1040, 1045 (D.C.Cir.1972). Judge Duniway, in *Heisler v. United States,* 394 F.2d 692, 696 (9th Cir.), *cert. denied,* 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968) (permitting amendment in the denomination of a coun-

terfeit bill from $20 to $10), commented: "[W]e think that the progeny of *Bain* are out of joint." [4]

The Eighth Circuit has stated that "a finding of prejudice to the defendant must be present before an amendment [of an indictment] will be held impermissible." *United States v. Burnett,* 582 F.2d 436, 438 (8th Cir.1976).

■ Thus, the modern rule is that an indictment may be amended by the court, provided that the amendment is not substantial, it is sufficiently definite and certain, the accused is not taken by surprise, and any evidence the defendant had before the amendment would be equally available to him after the amendment.

■ With respect to the indictment, there is no claim in this case that the identity of the accused was misstated, that any harm was done her by the amendment, or that she was not fully cognizant of the crime with which she was charged. The detail of the checks described in each count of the indictment is adequate to protect her against another prosecution for the same offense. The amendment simply corrected a stenographic error in the typing of the indictment, which used appellant's given name, "ANGELA," instead of "ANDREA" in describing the given name of the payee on the forged checks. Correcting the name by changing three letters did not change the nature of the crime charged or charge a different offense from that alleged by the grand jury. It did not prejudice appellant's substantial rights. "[T]he amendment was only one of form." *See Denny, supra,* 165 F.2d at 670. We accordingly uphold the validity of the indictment as amended, typed and presented to the trial jury.

**4.** The Ninth Circuit's decision in *Heisler* criticizes the reasoning of its prior decision in *Carney v. United States,* 163 F.2d 784 (9th Cir. 1947), *cert. denied,* 332 U.S. 824, 68 S.Ct. 165, 92 L.Ed. 400 (1948), on which appellant relies. The *Carney* case was again disapproved—though not overruled—by the Ninth Circuit in *United States v. Dawson,* 516 F.2d 796, 802–03 (9th Cir.1975).

## II. INSUFFICIENT EVIDENCE ON COUNT II

### A. *The Offense Charged*

■ Appellant's second contention is that the evidence is insufficient to support the jury's guilty verdict on Count II, *i.e.,* that

On or about December 13, 1981, ANGELA M. KEGLER with unlawful and fraudulent intent, did transport and *cause* [5] to be transported in interstate commerce from the District of Columbia to Richmond, Virginia, a falsely made, forged and altered security, that is a check in the name of ANDREA MATEER drawn on the account of the Perseco Company knowing the same to be falsely made, forged and altered.

(Emphasis added.) The security in question was a check (the "Perseco check") drawn on a Virginia bank and deposited in the District of Columbia. Such depositing of a check *causes* the bank in the ordinary course of business to transmit the check interstate for payment. The person who deposits a forged check under such circumstances thereby knowingly *causes* it to be transported interstate and, given proof of the required criminal intent and knowledge, is liable as a principal under 18 U.S.C. § 2(b) (1976) for the offense proscribed by *id.* § 2314. *Pereira v. United States,* 347 U.S. 1, 9, 74 S.Ct. 358, 363, 98 L.Ed. 435 (1954).

The jury, after complete instructions as to the elements of the offense and the weight they might give to both direct and circumstantial evidence (Tr. 255–56), found appellant guilty on both counts. Appellant does not argue that the evidence was insufficient with regard to Count I, her causing the interstate transportation of the "Double J Welding" check; she attacks only the verdict relating to the Perseco check.

**5.** 18 U.S.C. § 2(b) (1976) provides: "Whoever willfully *causes* an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." (Emphasis added.)

## B. *The Evidentiary Standard*

■ In weighing the evidentiary support for that verdict, it is elementary that we are required to view the evidence in the light most favorable to the jury's verdict. *United States v. Foster,* 584 F.2d 997, 1000 (D.C.Cir.), *cert. denied,* 439 U.S. 1006, 99 S.Ct. 620, 58 L.Ed.2d 682 (1978) (citing cases). There is no legal distinction between testimonial (direct) and circumstantial evidence:

> Circumstantial evidence . . . is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more.

*Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). *See also United States v. Watkins,* 519 F.2d 294, 297 (D.C.Cir.1975); *United States v. Fench,* 470 F.2d 1234, 1242 (D.C.Cir.1972), *cert. denied,* 410 U.S. 909, 93 S.Ct. 964, 35 L.Ed.2d 271 (1973). The *corpus delicti* of a crime may be proved circumstantially. *See Anderson v. United States,* 406 F.2d 529, 532–33 (8th Cir.1969) (violation of 18 U.S.C. § 2314 proved entirely by circumstantial evidence).

## C. *The Evidence*

■ While there is no *direct* evidence that appellant deposited the Perseco check, there is a very substantial amount of direct and circumstantial evidence that identifies appellant as participating in every phase of this fraudulent undertaking. The direct and circumstantial evidence that was presented to the jury for its consideration permitted it to find the following facts:

1. Appellant opened a bank account on November 19, 1981 (Pl's Ex. 24–A), with a deposit of $100 in a Washington, D.C., branch of the American Savings Bank, using the false name "Andrea Mateer" (Tr. 19, 67–71), and she used that name throughout the period relevant to this case. She gave false addresses in the District of Columbia and Virginia. In executing her fraudulent scheme, she used false identification documents in the form of a fraudulent Virginia driver's license (Gov't Ex. 3, Tr. 22–23) (bearing her picture, by which she was identified), a false IBM work identification (Tr. 22, 70–71), and a forged Master Credit Card (Gov't Ex. 6). The opening of the bank account, the false name and forged identification documents that appellant used throughout, and the printed form of the forged Perseco check indicate a high degree of prior preparation and that appellant acted from the very beginning with unlawful and fraudulent intent. *Cf. United States v. Mucci,* 630 F.2d 737, 741–42 (10th Cir.1980).

2. On November 19, 1981, at the same branch bank where she had just made her initial deposit of $100, appellant ordered bank checks for withdrawing funds, and deposit slips for making deposits, to be printed with the following fictitious name and address:

> Andrea Mateer
> 2727 Duke Street
> Alexander, VA 22314

(Tr. 26–28; Gov't Ex. 4).

3. Appellant Kegler obtained the name "Andrea Mateer" from a renewal Visa Credit Card, No. 4366–050–924–035, that had been mailed to the real Andrea Kay Mateer, but which was never received by her. Andrea Mateer testified that she never engaged in any of the subsequent transactions that took place in her name (Tr. 140–41).

4. Appellant, apparently not knowing the correct name of "Alexandria," Virginia, made a mistake in ordering the checks and deposit slips to be printed to show her residential address as "Alexan*der,* VA" (Tr. 26; Gov't Ex. 4).

5. The printed checks and deposit slips that appellant had ordered were returned by the postal service to the bank as "unde-

livered" to the fraudulent and non-existent "Alexander, VA" address (Tr. 32). Later, an employee at the branch where appellant had opened the Mateer account, *personally* handed *all* the pre-printed checks and *deposit slips* to appellant (Tr. 33, 38).

6. The checks and the deposit slips were combined together in a single pad (Tr. 153). All bore the printed identification and address that appellant had ordered, including the mistaken city name "Alexander, VA" (Gov't Ex's 15–17, 18–21, 24–A, 24–B, 24–C; Tr. 152–53).

7. On December 22, 1981, a forged $2,700 check, drawn on the account of "Double J Welding," at the Arlington Bank and Trust Company, Arlington, Texas (Tr. 151, Gov't Ex's 9, 24–B), was deposited in appellant's account.

8. The Double J check was made payable to "Andrea Mateer." Appellant's participation in the Double J deposit is indicated by (1) her "Andrea Mateer" endorsement of the check, which the handwriting expert specifically identified as being in her handwriting (Tr. 219, Gov't Ex. 9); (2) the use of one of the pre-printed deposit slips, which other evidence indicated were in her possession on that date; and (3) the fact that the deposit was made at the same branch where appellant had opened the Mateer account (Tr. 156). Appellant does not contest that she deposited the Double J check. (Brief of Appellant at 24.)

9. The next day, December 23, 1981, four "Andrea Mateer" checks totalling $2,136 were given to the Hecht Company (Hecht's), a department store, in payment for merchandise. According to expert testimony, these four checks were in appellant's handwriting (Tr. 219). Two of the checks (Gov't Ex's 18, 20) also bore appellant's fingerprints and indicated that a forged Master Card, No. 5211–0571–8782, in the name of "Andrea Matter" (sic) (Gov't Ex. 6) had been used as identification.

10. That same day, December 23, 1981, a forged check for $7,000, drawn on the account of "The Perseco Company" at the "First and Merchants National Bank," of Richmond, Virginia (Gov't Ex. 10), was de-

posited in the same "Andrea Mateer" account (Gov't Ex. 24–C). This check is the basis for Count II. The payee on the forged Perseco Company check was "Andrea Mateer, 2727 Duke St., Alexan*der*, VA 22314" (emphasis added). The depositor used a pre-printed deposit slip from appellant's pad, identical to the deposit slip used by appellant the day before to make her deposit of the Double J check.

11. The Perseco Company check was deposited in *the same branch office* (Branch No. 13) where appellant had made her two prior deposits in the Mateer account (Tr. 156), and where she had picked up the pre-printed checks and deposit slips.

12. Appellant also was identified *personally* and by her *handwriting* as the person who presented a $613 check, signed by "Andrea Mateer," to Delta Air Lines on December 24, 1981, at Washington National Airport in Virginia (Tr. 41–51, 218–20; Gov't Ex. 5). At this time she also furnished for identification the same forged Master Credit Card (Gov't Ex. 6) as was given for identification on the check for $1,039.99, to the Hecht Company (Gov't Ex. 21) on December 23, 1981. The handwriting expert identified appellant's handwriting on the Delta Air Lines check. The fraudulent Virginia driver's license that she presented on December 23, 1981, to Delta Air Lines for identification purposes is also a basis for identifying her, as her photograph appears thereon (Gov't Ex. 3; Tr. 43–48). This driver's license also was used by appellant when she opened the bank account (Tr. 22). The facts set forth in paragraphs 7, 8, 9 and 10, *supra*, also identify appellant as having possession of the pre-printed checks and deposit slips on December 23, 1981, when another one of the printed Mateer deposit slips was used to deposit the Perseco check.

13. When the person who, on December 24, 1981, signed "Andrea Mateer" to three checks (Gov't Ex's 15–17) and gave them to Hecht's in payment for merchandise, she used the renewed Visa Card of Andrea Mateer, No. 4366–050–924–035 (Tr. 139), for identification on each check. This is the

same card from which appellant appropriated the alias "Andrea Mateer."

14. While there is no expert handwriting testimony on the point, the forged signature "Andrea Mateer" on the forged Master Card that appellant used as identification (Gov't Ex. 6, Tr. 44) with the Hecht check on December 23 (Gov't Ex. 21),[6] and with the Delta Air Lines check on December 24 (Ex. 5, Tr. 42), which bore appellant's *identified handwriting* (Tr. 219), is practically identical to the signatures on the three Hecht's checks of December 24, 1981 (Gov't Ex's 15, 16, 17).

This evidence is conclusive that a $7,000 check was falsely made and forged to simulate a Perseco Company check (Tr. 89)[7] and transported interstate.[8] The forged check was made payable to "Andrea Mateer" at the mistaken "Alexander, VA" address. It was drawn on the bank account of the Perseco Company at the First and Merchants National Bank of Richmond, Virginia (Gov't Ex. 10), dated December 21, 1981, numbered 12044, deposited to the account of "Andrea Mateer" at the American Savings Bank, Washington, D.C., on December 23, 1981, and cleared in due course through the Federal Reserve Bank of Richmond, Virginia (Gov't Ex's 10, 24–C).

### D.  *Appellant's Contentions*

Appellant, who introduced no evidence rebutting the prosecution's case, relies entirely on the *absence* of certain physical evidence. Specifically, she points to the inability of the prosecution to find her fingerprints on the Perseco Company check and to the absence of her endorsement thereon, while her fingerprints and her endorsement, identified by the handwriting expert, were on the forged Double J check that appellant does not on this appeal deny that she caused to be transported.

The forged Perseco check was deposited to the credit of the Mateer account. It was not endorsed, but was accompanied by a pre-printed "Andrea Mateer" deposit slip. The bank followed the frequent practice, where a check is deposited to the credit of the payee, of guaranteeing the endorsement (Gov't Ex. 10). The absence of appellant's "Andrea Mateer" endorsement thus is no proof whatsoever that appellant did not deposit the check and thereby cause its interstate transportation.

Appellant's counsel also argues that the inability of the government's handwriting expert to identify the handwriting on three "Andrea Mateer" checks (Gov't Ex's 15–17), drawn on appellant's account and given to Hecht's in payment for merchandise on December 24th, the day *after* the Perseco check was deposited, indicates that some other person was also involved in using the Mateer (Kegler) account. Appellant offers no suggestion as to who that other person might be.[9] Yet she claims from this that it was impermissible for the jury to conclude that appellant deposited the Perseco check and caused its interstate transportation. We disagree. True, the handwriting expert testified that in his opinion it was "strongly indicated" that these three particular checks were *prepared* by someone other than appellant (Tr. 220). But there is no testimony as to *who* wrote those three checks or who presented them to Hecht's. The lack of direct evidence that appellant drafted or presented the three checks to

---

6. Smudged writing indicates the same identification was given on other checks introduced in evidence (Gov't Ex's 18, 20).

7. The Perseco Company is located in Willowbrook, Illinois, but carried a bank account at the First National Bank of Richmond, Virginia.

8. The forged check used the same number as a valid Perseco Company check issued by Perseco and made payable to Schwartz Paper Company, which was never received by the payee or presented for payment (Tr. 89).

9. Appellant originally had all of the "Mateer" checks in her personal checkbook. Under such circumstances the jury could conclude that if "someone else" was using appellant's checks, she got them from Kegler. Thus, Kegler presumably would know the identity of that "someone else." But no testimony has been offered to explain how "someone else" came to be using her account, or who that person might be. Nor did the defense attempt to explain why "someone else" wanted to deposit $7,000 in Kegler's "Andrea Mateer" account.

Hecht's in return for merchandise has little or no relevance to whether appellant deposited the Perseco check. The two transactions were not directly connected and the nature of the transactions were different.

The expert handwriting testimony is not exculpatory. It is of little or no probative value on the claim that appellant is not criminally responsible for depositing the *Perseco check* the *day before.* Appellant was identified by her *handwriting* as the maker of five (all four of the checks passed on December 23, 1981) of the eight checks. She was also identified by *personal observation,* by the picture on her Virginia driver's license, and by her handwriting (Tr. 218) as the maker of one of those checks (Tr. 43–51). It is not surprising that her handwriting could not be identified on every one of the checks.[10]

### E. The "Alexander, VA" Mistake

We note additional support for the jury's guilty finding on Count II in the fact that the payee of the forged Perseco Company check was "Andrea Mateer," and the typewritten address on the face of that check was "Alexan*der*, VA." This repetition of the *same mistake* that appellant made at the outset when she opened the bank account and ordered the checks and deposit slips so printed (Tr. 37, Gov't Ex. 4), supports the jury's verdict on the issue of *identity,* which is the controlling issue here. Appellant was identified positively as the person who made the original "Alexander, VA" mistake. The application of the *continuing mistake rationale,* which serves to identify her in connection with the Perseco

check, is the same as has been applied in other cases where *misspelling* a word identified the criminal. *See* 7 J. Wigmore, Evidence § 2024 (Chadbourn rev. 1978) ("Identification by *spelling* . . . may be made . . . by specimens produced and authenticated."). "A person's mode of *spelling* is also a trait which evidences whether or not a document with words spelled in a given way was probably executed by him. . . . A peculiar mode of spelling has always been treated as relevant to evidence a document's authorship . . . ." 1 J. Wigmore, *supra,* § 99.[11]

In sum, the jury here could reasonably conclude that Kegler deposited the Perseco check from the following facts: (1) the check was deposited in the *same branch* (No. 13) where appellant had opened the account, picked up the pre-printed checks and deposit slips, and deposited the Double J check the day before; (2) the depositor used one of the deposit slips that were in appellant's possession at the time; (3) substantial evidence as set forth above indicates that appellant participated significantly in some manner in every phase of the fraudulent scheme; and (4) *appellant was the only person who could profit from the deposit, because no funds in the Andrea Mateer account could be withdrawn except by her signature, which must conform to her Andrea Mateer alias signature card.*

The concatenation of all these facts and circumstances left the jury free to infer that appellant deposited the Perseco Company check, and thereby *caused* its transportation interstate.[12] The claim that

---

**10.** Appellant's argument—that her handwriting was not found on the three Hecht's checks, and hence she is not guilty of the offense involving the Perseco check—is reminiscent of the defense once offered by a bank robber, who claimed that he could not have committed that crime because at the time he had been five miles away, riding a white horse. "And," he announced triumphantly, "here is the white horse, to prove it!" The contentions are *non sequiturs.*

**11.** A famous application of this principle is found in *Parnell Commission's Proceedings,* 78th Day, Times' Rep. pt. 21, at 225, 230, 231 (1888) (misspelling of "hesitancy" used to dem-

onstrate that witness was forger), *reprinted in* 5 J. Wigmore, *supra,* § 1368, at 47–48.

**12.** In *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917), an insurance agent, whose duty was to verify death claims and deliver the proofs and certificates to the company's local superintendent, delivered documents supporting a false claim for the purpose of defrauding the company. He knew that the superintendent would mail the claim to the company and that the company would pay it. The superintendent innocently approved and mailed the documents. The indictment against the agent alleged that he "caused" the mailing in violation of the fail fraud statute,

"someone else" *might* also have been perpetrating fraud by drawing checks on appellant's account and that this possibility indicates that some other person deposited the $7,000 Perseco check, was a factor that was presented to the jury and rejected by it. Appellant's unlawful and fraudulent intent—and her knowledge that the checks were forged—was amply proved by the direct evidence of Kegler's participation in the entire scheme, which was fraudulent on its face in every particular. A complete reading of the entire transcript and a close examination of all the exhibits discloses the absence of even an iota of evidence to counter any of the elements of the crime as proved by the government.

While the conclusion that Kegler also deposited the Perseco check to her "Mateer" account rests on circumstantial evidence, that proof is very strong. Kegler's personal tracks were shown to be everywhere, in each phase and feature of this fraudulent scheme and plan, by expert handwriting testimony, personal identification, fingerprints, and by her actual admission of the strength of the circumstantial and expert testimony identifying her as the person who committed principal acts in the offenses. (Brief of Appellant at 24.) As Justice Clark's opinion in *Holland, supra,* 348 U.S. at 140, 75 S.Ct. at 137, prescribed, the jury used its experience with people and events, weighed the chances that the evidence correctly pointed to guilt against the contrary possibility, and indicated by its verdict that it was convinced of Kegler's guilt beyond a reasonable doubt. Nothing more can be required. We agree with the jury's conclusion. The evidence was clearly sufficient to support the jury's finding on Count II that the evidence proved appellant's guilt beyond a reasonable doubt as a principal violator of 18 U.S.C. §§ 2314, 2(b) (1976). *See Pereira, supra,* 347 U.S. at 8–11, 74 S.Ct. at 362–364.

### F. The Government's Request for Instructions on Aiding and Abetting

The government also requested an aiding and abetting instruction on Count II in accordance with "Red Book" Instruction No. 4.02, *District of Columbia Criminal Jury Instructions* (3d ed. 1978) (Tr. 243). The court reserved ruling on the government's request until after closing argument (Tr. 243–46), and then refused to give the instruction. The instruction should have been given and counsel advised *before* argument so he could discuss that rule in his presentation to the jury.[13] Even if appellant did not personally deposit the check, and had not caused the check to be deposited, the jury could have concluded that she definitely aided and abetted the deposit and the ensuing interstate transportation by opening the fraudulent bank account, procuring the "Andrea Mateer" printed deposit slips, and participating in the preparation of the forged Perseco check.

While aiding and abetting might commonly be thought of as an offense in itself, it is not an independent crime under 18 U.S.C. § 2. That statute provides no penalty, but only abolishes the distinction between common law notions of "principal" and "accessory." Under it, the acts of the perpetrator become the acts of

---

which made it a criminal offense for one to "cause to be placed, any . . . writing . . . in any post office . . . to carry out any scheme or artifice to defraud." The Supreme Court held that the innocent superintendent became the agent of the accused and that the accused was guilty because he did "cause [the letter] to be placed" in the post office with the requisite intent. The Court remarked:

"Cause" is a word of very broad import and its meaning is generally known. It is used in the section in its well-known sense of bringing about, and in such sense it is applicable to the conduct of Kenofskey. He deliberately calculated the effect of giving the false proofs to his superior officer; and the effect followed, demonstrating the efficacy of his selection of means.

*Id.* at 443, 37 S.Ct. at 439.

13. In our view, Instruction No. 4.05, which defines "causing," and was also requested (Tr. 243), should also have been given to aid the jury, particularly since the indictment charged that appellant did "cause" the interstate transportation of the Perseco check, and the court's charge referred to "causing" three times (Tr. 259, 261).

**201**

the aider and abettor and the latter can be charged with having done the acts himself.[14] An individual may be indicted as a principal for commission of a substantive crime and convicted by proof showing him to be an aider or abettor.[15] The indictment need not specifically charge a violation of 18 U.S.C. § 2.[16] An aiding and abetting instruction may be given in a case where the indictment does not allege violation of the aiding and abetting statute.[17] An aider and abettor of a crime may be tried and convicted even though the principal is not tried, convicted or identified.[18]

Had the court given the aiding and abetting instruction, the deliberations of the jury would have been greatly eased and the time devoted to the case by this court would have been reduced substantially. We do not, however, rely on the aiding and abetting theory in reaching our decision today.[19]

### III. CONCLUSION

Giving the facts the most favorable interpretation in support of the jury's verdict, as we must, we find that (1) the minor alteration of the indictment was proper to correct a misnomer, and (2) the jury had ample direct and circumstantial evidence to conclude beyond a reasonable doubt that appellant, with the requisite knowledge of its forged character, deposited the Perseco check in the bank and thus was guilty of *causing* the check to be transported interstate with unlawful and fraudulent intent and knowledge that it was forged.

Appellant's judgment of conviction on both counts is therefore affirmed.

*Judgment accordingly.*

---

**14.** *United States v. J.R. Watkins Co.,* 127 F.Supp. 97, 101 (D.Minn.1954).

**15.** *United States v. Provenzano,* 334 F.2d 678, 691 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *United States v. Washington,* 287 F.2d 819 (7th Cir.), *cert. denied,* 366 U.S. 969, 81 S.Ct. 1933, 6 L.Ed.2d 1259 (1961); *Johnson v. United States,* 62 F.2d 32, 34–35 (9th Cir.1932); *Colbeck v. United States,* 10 F.2d 401, 403 (7th Cir.1925), *cert. denied,* 271 U.S. 662, 46 S.Ct. 474, 70 L.Ed. 1138 (1926).

**16.** *United States v. Taylor,* 464 F.2d 240, 241–42 n. 1 (2d Cir.1972); *United States v. Tauro,* 362 F.Supp. 688, 692 (W.D.Pa.1973), *aff'd mem.,* 493 F.2d 1402 (3d Cir.1974).

**17.** *United States v. Pickens,* 465 F.2d 884, 885 (10th Cir.1972).

**18.** *United States v. Provenzano,* 334 F.2d 678, 691 (3d Cir.), *cert. denied,* 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964); *United States v. Salerno,* 330 F.Supp. 1401, 1402 (M.D.Pa. 1971).

**19.** The refusals to give the aiding and abetting instruction or the "causing" instruction in this case were circumstances that acted in appellant's favor, for the instructions she received were more favorable than they should have been. The jury plainly considered her to be the direct perpetrator of the frauds involved.