**Duane R. SHARRAR, Petitioner,**

v.

**Dale E. FOLTZ, Respondent.**

**Civ. A. No. 86CV–40220–FL.**

United States District Court,
E.D. Michigan, S.D.

April 30, 1987.

Duane Sharrar, pro se.

Edgar L. Church, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for respondent.

### MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Petitioner, Duane Richard Sharrar, currently confined at the State Prison of Southern Michigan in Jackson, Michigan, has filed this *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 24, 1980, Petitioner was convicted of second-degree criminal sexual conduct, Mich.Comp.Laws § 750.520c(1)(a), after a bench trial in Hillsdale County Circuit Court. (Docket No. 8–4702). On June

15, 1981, he was sentenced to ten to fifteen years imprisonment.[1]

The main controversy in this case centers on the date the offense was allegedly committed. Petitioner was not informed until the day of trial that he was charged with committing the assault on September 3, 1979.

In his appeal as of right, Petitioner argued, among other things, the ineffective assistance of trial counsel, claiming that counsel had apparently allowed himself to be surprised by the last minute change of dates and had abandoned Petitioner's alibi defense. On August 9, 1982, the Michigan Court of Appeals remanded the case for an evidentiary hearing on this issue and Petitioner's claim that the prosecution failed to produce *res gestae* witnesses. (Docket No. 62938). On October 21, 1982, the trial court held the hearing and denied Petitioner's motion for new trial. The Michigan Court of Appeals subsequently affirmed the conviction in a *per curiam* opinion dated April 27, 1983. (Docket No. 62938). The Michigan Supreme Court denied leave to appeal on November 30, 1983. (Docket No. 71699).

Petitioner then changed his grounds for appeal, essentially claiming that the abrupt amendment of the date deprived him of his due process right to fair notice. On October 28, 1985, the Court of Appeals denied Petitioner's *pro per* delayed application for leave to appeal. (Docket No. 85933). The state Supreme Court denied Petitioner's delayed application for leave to appeal on March 24, 1986. (Docket No. 77591). Petitioner filed the instant habeas application on May 14, 1986, raising the due process issue and a claim of ineffective assistance of appellate counsel. Petitioner adequately exhausted state court remedies before seeking federal habeas corpus relief. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982).

Petitioner was charged with sexually assaulting a twelve year-old boy. He was an acquaintance of the victim's family and occasionally spent the night at their home. The Information listed both August 26, 1979 and September 5, 1979 as dates for the assault. At the preliminary examination, held on March 4, 1980, the prosecution's witnesses basically agreed on the August 26 date. The victim's mother testified that August 26 was apparently the "last time" Petitioner had stayed at the house. She stated that she had no knowledge of a September visit. (P. Tr. 37–38). The victim's older brother testified that the incident occurred on Sunday, August 26, 1979. (P. Tr. 11, 14). Finally, the victim, though unsure of the precise date, stated that the assault occurred shortly after his August 17, 1979, birthday (P. Tr. 29).

Defense counsel, Gerald Gibbons, subsequently filed a motion to specify the date, time, and place of the incident. The prosecution answered that the alleged offense in fact occurred "on or about August 26, 1979." Trial was set for June 26, 1980. *See* Summary of Pretrial Conference, May 2, 1980, pg. 2. Mr. Gibbons then filed a Notice of Alibi for the August date.

The prosecutor subsequently filed a motion to amend the date of the offense from August 26 to September 2, 1979, the following Sunday. On June 16, 1980, a hearing was held on the motion to amend. The prosecution claimed that the victim had had difficulty in "pinpointing" the correct date. Mr. Gibbons objected to the amendment, claiming prejudice:

> ... [T]he date was amended after Officer Schindler [the investigating officer] went and talked to our alibi witnesses twice. His only concern was the date when Mr. Sharrar was in Hillsdale and then we are filed with a motion to amend the date. It clearly seems to show that there's more than a boy not being able to recall the date ...[2] [T]ime is of essence

---

1. The sentencing was delayed for approximately one year because Petitioner had absconded on bond. He was subsequently extradited from Texas and returned to Hillsdale County for sentencing.

2. At trial, defense counsel elicited testimony from Officer Schindler that for a year and a half, Shawn Sharrar, apparently a relative of Petitioner, had been his foster child. Counsel was attempting to show that Schindler was mo-

and that goes to alibi notice ... and now at this point I think we would need an adjournment so that I could properly defend this new date ... [and] ... investigate the facts ...

(Motion Tr. 16). Although the trial court permitted the amendment, it also granted a continuance so that counsel could investigate new witnesses and adequately prepare a defense for the new date. (Motion Tr. 18–20). Trial was reset for July 24, 1980. Petitioner again filed a Notice of Alibi, this time for September 2, 1979.

However, on July 24, immediately before trial, the prosecution again moved to amend the date, claiming that "it now appears that the appropriate date is September 3, 1979, which actually was Labor Day [a Monday]." (T. Tr. 9). Defense counsel again objected:

... I am almost lost for words, mainly because this date has been so important in this case, *because we have filed an alibi defense*. The prosecutor knows this. Statements were made repeatedly August 26. [sic].

There was even an initial count September 5. Now it's September 2, when the prosecutor and myself went into this at length. I cited law to the Court. The Court said it would be September 2. After the prosecutor said his investigating officer had re-investigated the alleged incident, which that in itself was improperly done—the re-investigation.

Now today is the day of trial and we are going to September 3. This was—I use the term "motion." I even have a copy of the motion here. I cited all the applicable law to the Court. June 16, 1980, a motion to specify date, time and place.

\* \* \* \* \* \*

I would ask for a mistrial and a new preliminary examination based upon ... for the third time, a change of date. We

have not had a preliminary on this new date. I don't know what happened on this date in question, and I would ask that we have our constitutional right of discovery and preliminary examination and dismiss this today, declare a mistrial, and wish to reissue, to do so. But this is prejudiced [sic] to the defendant. I have spent vast numerous hours investigating this. They tell us one date and they change it. I have spent evenings, weekends, researching law, facts, witnesses; 20 people came in today. I came to trial prepared, for a date at the last moment is changed once again.

I feel this is prejudicial to the defendant; me having to handle this at such a late time and date. The prosecutor spoke with me yesterday and mentioned nothing of this change of date to me. He tells me this morning ... I ask the matter be dismissed.

(T.Tr. 9–11). *(Emphasis added)*. This time, however, the trial court denied all of Petitioner's motions[3] and allowed another amendment of the date of the offense.

At trial, both the victim and his brother testified that Petitioner had arrived at their home in an El Camino on the evening of September 3, 1979. They purportedly remembered the date because it was the night before school began. The boys were apparently sharing a bedroom with their four-year old niece, Angie. The victim testified that the assault occurred around 11:00 in the evening. His brother was out of the room at the time. There was also testimony indicating that Petitioner may have previously assaulted both boys and Angie.

Petitioner testified in his own defense. He stated that he had given his car, an El Camino, to his girlfriend Beverly Bair over the Labor Day weekend so that she could move to Manistee. He also stated that he was at his home on Lake Pleasant Road

---

tivated by personal considerations while investigating Petitioner's alibi.

**3.** Gibbons also elicited testimony at trial that Schindler had taken the alibi lists, talked with potential defense witnesses and then discussed the case with the victim's family, eventually

"narrowing" down the date to September 3, 1979. (T.Tr. 169, 170–176). He then requested a continuance to further investigate an alibi. The court denied the request because Gibbons was supposedly "familiar" with the new date. (T.Tr. 179–180).

with his brother and another friend, Dan Easler, on September 3, 1979. Beverly Bair testified that she and Petitioner had exchanged cars that weekend. Petitioner was apparently driving Bair's 1972 Chevrolet. (Tr. 45). However, since she was "up North," she could not testify as to Petitioner's whereabouts on Labor Day. She did state that Petitioner joined her in Manistee on September 4, 1979. The parties stipulated that the testimony of Bair's son, Marvin, would be the same as his mother's. (T.Tr. 218).

Petitioner's brother, Clifford Sharrar, testified that he was living with Petitioner at the time of the assault. He did not, however, state that he was with Petitioner on the night of September 3. Dan Easler was not called as an alibi witness. Mr. Gibbons waived any further witnesses as "cumulative." (Tr. 221).

At the subsequent evidentiary hearing, Petitioner changed his alibi for September 3, 1979. Petitioner now claimed that he was "up North" with Beverly Bair on Labor Day. He stated he drove to her home during the late afternoon of the third. When asked about the inconsistencies between his hearing and trial testimony, Petitioner stated that at trial he was concentrating on the original date of September 2, and gave his testimony accordingly. (M.Tr. 43–44). He claimed that he was confused and recalled nothing, at that time, about September 3. Ms. Bair also testified that Petitioner was with her on Labor Day. She could not recall testifying at trial. Marvin Bair essentially supported his mother's testimony, stating that on the evening of the third, Petitioner was in Manistee with him and his mother. He later stated that Petitioner may have arrived on the third or fourth. He claimed that no one asked him at trial where Petitioner was on the night of September 3, 1979. He did recall that his mother testified at trial.

■■■ This Court will first address Petitioner's due process claim. "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to *permit adequate preparation of his defense.*" *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir.1984). (*Emphasis added*). See generally *Blake v. Morford*, 563 F.2d 248 (6th Cir.1977), *cert. denied*, 434 U.S. 1038, 98 S.Ct. 775, 54 L.Ed.2d 787 (1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir.1977). The offense must be described with "precision and clarity" in order to inform the accused of the crime of which he stands charged and enable him, as presumptively innocent, to prepare for trial. *Koontz*, 731 F.2d at 369; *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir.), *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976). The ability of a defendant to adequately prepare for trial is the crux of the due process right to fair notice. As stated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1978), "a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend."

In *Koontz, supra*, the original indictment charged the petitioner with arson. The indictment was amended three days prior to trial, however, charging him with conspiracy to burn an occupied structure. The Sixth Circuit found that it was not until the petitioner's notice of alibi was filed that the state amended the charge to "arson for hire," thus rendering his alibi defense moot. The Court held that based on the facts of the case, three days was insufficient time to develop proof that he did not hire another to commit the arson for him. Thus, the Court found prejudice to the petitioner's opportunity to defend himself and granted the petition for writ of habeas corpus.

While *Koontz* deals with the amendment of the charge, *Jervis v. Hall*, 622 F.2d 19 (1st Cir.1980), involves the amendment of the actual date of the offense. In *Jervis*, the prosecution was allowed to amend the date of the offense from August 5, 1972, to "on or about July 15, 1972." The Court noted that the August 5 date was apparently a clerical error, *i.e.*, it was the date on which the petitioner was arrested. The

Jervis court found no prejudice to the defense and thus denied habeas corpus relief, noting:

> Petitioner in opposing the motion, stated he was not ready to proceed on the larceny charge, but he did not seek a continuance. While trial commenced on the day the motion was granted, May 8, 1973, Petitioner did not make his opening statement or call any witnesses until May 14, 1973.... *Petitioner does not now state he would have conducted his defense differently if informed earlier of the correct date of the larceny,* and we see no prejudice to petitioner from allowance of the amendment.

622 F.2d at 22–23. (*Emphasis added*).

■ In denying Petitioner's motions just before trial, the trial court in the instant case noted that time is not of the essence when the charge is rape. As a matter of Michigan statutory law, the trial court was correct. The prosecution did not have to prove the exact day of the assault to prove its case. Mich.Comp.Laws § 750.520c.[4] That, however, does not dispose of Petitioner's due process claim. Petitioner has never argued before this Court that time was of the essence in his criminal sexual conduct trial. He is essentially claiming that he was denied a fair opportunity to establish that he was not present (and in fact was somewhere else) during the time he is accused of having committed the crime.

In *People v. Adams,* 311 Mich. 446, 18 N.W.2d 888 (1945), the Michigan Supreme Court found prejudice and reversed in a situation very similar to the instant case. There, the information listed the offense (criminal sexual conduct) as occuring "on or about March 8, 1944." The victim, however, testified that the offense occurred during the first part of March. Although two defense witnesses testified that the

crime had not occurred on March 8, they could not testify similarly about the other fourteen days in the first part of the month. Thus, because of the uncertainty in the prosecution's proofs, the defendant was prejudiced in preparing his defense.

■ Under 28 U.S.C. § 2254, a writ of habeas corpus will issue "only on the ground that [the petitioner] is in custody in violation of the constitution or laws or treaties of the United States." Based on the facts of this case the Court does not find sufficient prejudice to the defendant to constitute a due process violation. Although the petitioner's trial lasted only one day, unlike the trial in *Jervis,* the change was not very significant in light of the fact that petitioner does not now state how he would have conducted his defense differently if informed earlier of the correct date of the sexual assault. He does assert that he has other alibi witnesses, he does not indicate who they were or to what they would have testified. In fact, the record reflects that petitioner's counsel during the trial called approximately twenty (20) witnesses to the trial but only four were called to testify. Further, witnesses were waived as "culmulative." (TR 221).[5]

Moreover, the March 21, 1982 evidentiary hearing ordered by the Michigan Court of Appeals on the issue of whether petitioner's counsel had allowed himself to be surprised by the last minute change of dates thereby abandoning the alibi defense, makes it clear to the Court that petitioner was not prejudiced, and that petitioner is, in fact, no different from any other litigant who is presenting witnesses (including himself) who recant their testimony. What is interesting about this case is that petitioner and witness Beverly Bair, his girlfriend, who both testified at the trial as to petitioner's whereabouts on September 3rd, now

---

4. Mich.Comp.Laws § 767.45(2) states that the Information shall contain the time of the offense as near as possible as long as time is not of the essence. Mich.Comp.Laws § 767.76 allows the parties to cure a defect in the information; a new trial need not be declared unless the defendant has been misled or *prejudiced* by the variance.

5. Although petitioner asserts that the others were prepared to testify as to September 2nd and not the 3rd, this is not supported in the record. In fact, at the evidentiary hearing petitioner testified that his brother, Clifford Sharrar, Beverly Bair, Marvin Bair and Don Easler could have testified to his whereabouts on September 3rd 1979. At trial, however, all but Don Easler testified.

claim either that they did not testify at trial[6] or that they did not testify as to the 3rd.[7]

Therefore, for the reasons just stated, the petition for a writ of habeas corpus is DISMISSED. Moreover, as the petition is DENIED, the petitioner's motion pursuant to 18 U.S.C. § 3006A(g) for appointment of counsel is DENIED as being MOOT.

---

6. Beverly Bair, petitioner's girlfriend, testified at trial that she was "up north" on the third and couldn't remember where petitioner was on that weekend. The parties stipulated that Marvin Bair, Beverly Bair's son, would have testified the same. At the evidentiary hearing, Bair maintained that petitioner was with her on Labor Day. When asked about her trial testimony, Bair stated that she didn't testify and that the transcript which reflected such testimony was untruthful. This is despite the fact that her son testified at the hearing that she did testify.

7. At trial, petitioner testified that he was at home with his brother and a friend, Dan Easler, on September 3rd. However, at the evidentiary hearing he stated that he was "up north" with Beverly Bair. When asked about the inconsistancy, petitioner stated that he was confused and that he didn't testify as to September 3rd. In fact, he contended that the trial transcript was wrong.