978 F.2d 1259
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Reginald DENTS, Defendant-Appellant.
 No. 91-1602.
 United States Court of Appeals, Sixth Circuit.
 Oct. 29, 1992.
 
 Before RALPH B. GUY, Jr., and RYAN, Circuit Judges, and HULL, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Reginald Dents appeals his jury convictions on multiple counts of mail fraud, in violation of 18 U.S.C. § 1341, and interstate transportation of money acquired by fraud, in violation of 18 U.S.C. § 2314. On appeal, he contends that the district court erred in its instructions to the jury on Dents's defense of withdrawal from the fraudulent scheme; that the district court abused its discretion by admitting "other acts" evidence under Fed.R.Evid. 404(b); and that the convictions were not supported by sufficient evidence.
 
 
 2
 Finding no error in the proceeding below, we shall affirm.
 
 I.
 
 3
 Dents was employed by Precious Metals International ("PMI"), a telemarketing business that solicited investments in precious metals. PMI maintained offices and telemarketing sales staffs in several states. Dents managed the PMI office in Southfield, Michigan.
 
 
 4
 Clients of PMI testified that they received telephone calls from members of PMI's sales staff, soliciting precious metals investments. According to one PMI employee, in the initial call, the sales representative would read from a prepared script, extolling the investment potential of gold and silver. PMI would then send prospective investors an information packet.
 
 
 5
 The mailing was followed by a second telephone call, described as a "drive" call. During this call, the sales representative would again read from a script, offering a "deferred delivery contract" program for precious metals. The representative would inform the potential investor that under this program the investor would pay thirty percent of the contract price for future delivery of a quantity of a specific metal and that this payment would hold a contract on that quantity for delivery one year and one day from the date of investment. Just before the contract became due, PMI would send the investor a letter that set forth the delivery date for the metal and demanded the balance due on the contract. Dents often signed these demand letters. PMI offered two alternatives to taking delivery: the investor could pay a fee to extend the length of the contract or he could sell the contract. The option to sell the contract, however, was illusory, because such a sale would inevitably result in a loss. As a practical matter, each investor faced the option of either sending PMI the large balance due on the contract in the hope of obtaining the metals or continuing the contract by paying the extension fees. Few PMI investors ever recouped their investment.
 
 
 6
 It was the practice of PMI that whenever a client expressed qualms about the status of their investments, PMI representatives would offer scripted assurance to the effect that the metals would appreciate in value, that PMI was a legitimate enterprise, and that the customer's investments were secure with PMI. Like the scripted sales pitches used to induce investments, however, these scripted assurances contained exaggerations and misrepresentations designed to relieve any concerns about PMI and, not incidentally, to dissuade the investor from further inquiry. Dents reviewed the contents of the scripts used in PMI's Southfield office.
 
 
 7
 PMI also developed a "load" program for its existing customers. Under this program, PMI would inform the customer of an "unusual opportunity" to buy extremely pure gold and silver from the Korean government. Both Dents and one of his employees, Stuart Hicks, contacted clients with this offer and solicited large investments.
 
 
 8
 Sometime in December 1984 or January 1985, Dents resigned his managerial position at PMI to start his own company, named Franklin International. According to the trial testimony of Andrea Moore, one of Dents's employees at Franklin, although Dents left PMI because he was not satisfied with his pay, he continued to maintain contact with PMI owner, Seymour Adler, and several PMI employees. Moore also testified that the Franklin International enterprise offered precisely the same type of deferred delivery program in precious metals as the one supervised by Dents at PMI. Like PMI, Franklin International did not invest the majority of the investors' money in precious metal but instead used the funds to pay rent, salaries, and commissions.
 
 
 9
 On January 3, 1990, a grand jury returned a six-count indictment against Dents and Seymour Adler concerning their involvement in PMI. Count I charged the two with conspiring to commit mail and wire fraud, in violation of 18 U.S.C. § 371. Counts II and III charged mail fraud, under 18 U.S.C. § 1341, relating to the mailing of two investors' checks to PMI on January 3, 1985. Counts IV, V, and VI alleged that, on January 7, 10, and 17, 1985, Dents and Adler caused three PMI investors to transfer funds obtained by fraud across state lines, in violation of 18 U.S.C. § 2314. Adler entered into a plea agreement with the government, and Dents opted for trial.
 
 
 10
 At the conclusion of the trial, a jury acquitted Dents on Count I, the conspiracy count, but convicted him on each of the substantive counts. The district court sentenced Dents to two concurrent five-year terms on the mail fraud counts, and two concurrent eight-year terms on Counts IV and V. The court also imposed a consecutive five-year term of probation on Count VI and ordered Dents to make restitution. Dents's timely appeal followed.
 
 II.
 
 11
 We begin by addressing Dents's contention that the district court improperly instructed the jury on the issue of withdrawal from the scheme. We note that although the jury did not convict Dents on the conspiracy count, the issue of withdrawal from the scheme to defraud remains relevant to the substantive fraud counts on which Dents was convicted, because each of those counts specifically alleged that Dents and Seymour Adler carried out a scheme to defraud by use of the mails. As one court has noted,
 
 
 12
 proof of a mail fraud scheme involving two or more persons is analogous to the nature of proof in a conspiracy, and the same may be said of withdrawal from a mail fraud scheme. An individual participant in a fraud scheme will be held liable for the acts of his agents and co-schemers that are within the general scope of the scheme, unless as in a conspiracy, he undertakes some affirmative act of withdrawal.
 
 
 13
 United States v. Cohen, 516 F.2d 1358, 1364 (8th Cir.1975) (citations omitted). See also United States v. Rodgers, 624 F.2d 1303, 1308 (5th Cir.1980), cert. denied, 450 U.S. 917 (1981); United States v. Toney, 598 F.2d 1349, 1355 (5th Cir.1979), cert. denied, 444 U.S. 1033 (1980). We therefore review the withdrawal issues in this case in the same manner in which we would review withdrawal issues in a conspiracy case.
 
 
 14
 Dents objected to the following instruction the district court proposed to give on the defense of withdrawal:
 
 
 15
 The defendant has raised the defense that he withdrew from the conspiracy before January 3, 1985. The defendant has the burden of proving that he did in fact withdraw, and that he withdrew before January 3, 1985. If you find that the defendant did not withdraw before January 3, 1985, and you find that the defendant withdrew on or before January 11, 1985, then that is a defense to Count VI and you must find the defendant not guilty on Count VI.
 
 
 16
 Once a person joins a conspiracy, that person remains a member until he withdraws from it. A person can withdraw from a conspiracy by taking some positive action which disavowed or defeated the purpose of the conspiracy. It is not enough if the evidence shows that the defendant merely ceased his own activities in furtherance of the conspiracy.
 
 
 17
 For example, a person may withdraw from a conspiracy by giving timely warning to the proper law enforcement authorities; or by wholly depriving his prior efforts of their effectiveness; or by taking actions inconsistent with the purpose of the conspiracy and making reasonable efforts to communicate those actions to his co-conspirator.
 
 
 18
 The fact that the defendant raises this defense does not relieve the government of its burden of proving the elements of the charge beyond a reasonable doubt. If you find that the defendant completely withdrew from the conspiracy before January 3, 1985, then you must find the defendant not guilty on Count I.
 
 
 19
 The district court overruled Dents's objection and gave the challenged instruction. The court identified January 3, 1985 as the critical date for withdrawal because the statute of limitations for the charged offenses was five years, 18 U.S.C. § 3282, and the indictment against Dents was returned on January 3, 1990.
 
 
 20
 During its deliberations, the jury submitted the following question to the court: "Why must Count I and Count VI be found not guilty and not II through V, since only I is for conspiracy, but the others are not, and the allegations on specific charges are about the same date." In response to this inquiry, the government and Dents agreed to the following supplementary instructions, which the court read to the jury:
 
 
 21
 The defendant has raised the defense that he withdrew from the conspiracy before January 3rd, 1985. The defendant has the burden of proving that he did, in fact, withdraw, and that he withdrew before January 3rd, 1985.
 
 
 22
 If you find that the defendant completely withdrew from the conspiracy before January the 3rd, 1985, then you must find him not guilty on Count I.
 
 
 23
 With regard to Count II, the defense of withdrawal does not apply, and you are not to concern yourselves with why.
 
 
 24
 If you find that the defendant completely withdrew from the conspiracy before January the 3rd, 1985 you must find the defendant not guilty on Counts III, IV, V, and VI, unless the government proves beyond a reasonable doubt as to each count separately that the defendant personally committed or aided and abetted the commission of the crime charged in that count.
 
 
 25
 Also, as for Count VI, if you find that the defendant withdrew from the conspiracy completely and that the withdrawal occurred on January the 11th, 1985, you must find the defendant not guilty, unless the government proves beyond a reasonable doubt that the defendant personally committed or aided and abetted the commission of the crime charged in Count VI.
 
 
 26
 Dents challenges these instructions on three grounds. First, he contends that the district court erred in instructing the jury that he had the burden of proving his withdrawal from the conspiracy. Second, he maintains that the district court improperly restricted the withdrawal defense to Counts I and VI of the indictment. Finally, he argues that the court impermissibly broadened the charges by referring to aiding and abetting in the supplementary instructions. We consider each of these issues in turn below.
 
 A.
 Burden of Proof on Withdrawal
 
 27
 The law in this circuit is clear that "[d]efendants have the burden of proving withdrawal because it is an affirmative defense." United States v. Lash, 937 F.2d 1077, 1083 (6th Cir.1991), cert. denied, 112 S.Ct. 397 (1991), and cert. denied, 112 S.Ct. 943 (1992); see also United States v. Battista, 646 F.2d 237, 246 (6th Cir.), cert. denied, 454 U.S. 1046 (1981).
 
 
 28
 Dents asks the court to overrule this clear precedent in light of the opposite result reached by the Seventh Circuit in United States v. Read, 658 F.2d 1225 (7th Cir.1981). Dents points to no other case that has followed the Seventh Circuit's approach in Read. Indeed, even in the wake of Read, this court has continued to place the burden of proving withdrawal on the defendant. See, e.g., Lash, 937 F.2d at 1083. It is an accepted prudential doctrine of this court that one panel may not overrule the decision of a previous panel. Meeks v. Illinois Central Gulf R.R., 738 F.2d 748, 751 (6th Cir.1984). We therefore decline Dents's invitation to overrule previous decisions of this court and place the burden of proving withdrawal from a conspiracy on the government. The district court's instruction conformed to the law of this circuit and was therefore not in error.
 
 B.
 
 29
 Restriction of Withdrawal Defense to Selected Counts
 
 
 30
 The district court's original instruction limited the withdrawal defense to Counts I and VI. In its supplemental instructions, however, the court extended the withdrawal defense to Counts III, IV, and V. Since Dents consented to these supplemental instructions, we review them under the plain error standard. Fed.R.Crim.P. 30, 52; United States v. Piccolo, 723 F.2d 1234, 1241 (6th Cir.1983) (en banc ), cert. denied, 466 U.S. 970 (1984). "Plain error requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." Id. (citation omitted).
 
 
 31
 The jury instructions in this case were not, taken as a whole, "so clearly erroneous as to likely produce a grave miscarriage of justice." Although it is unclear why the district court instructed the jury that it could not apply the withdrawal defense to Count II, the instruction did not amount to plain error. The jury convicted Dents on all the substantive counts, apparently finding sufficient evidence to conclude that Dents had not withdrawn from the scheme as of January 11, 1985. Because Count II concerned conduct that occurred on January 3, 1985, the jury would have reached the same verdict on this count, even if the court had instructed them that the withdrawal defense applied.[1]
 
 C.
 
 32
 The Reference to Aiding and Abetting in the Supplemental Instruction
 
 
 33
 Dents finally contends that the district court erred by including the terms "aiding and abetting" in the supplemental instructions because the indictment did not charge Dents with aiding and abetting and the court had not previously instructed the jury in this regard.
 
 
 34
 Again, the plain error standard of review applies because Dents consented to these supplemental instructions. As a preliminary matter, Counts IV and VI of the indictment specifically included charges under the aiding and abetting statute. Moreover, the reference to aiding and abetting with respect to the remaining counts was included only to make it clear to the jury that even if Dents had withdrawn from the conspiracy, he could still be held liable on the substantive counts if he personally committed the acts in question or aided and abetted in committing the acts. The statute on aiding and abetting does not define a crime; it merely provides a means of establishing liability under some other substantive criminal statute. Baumann v. United States, 692 F.2d 565, 571 (9th Cir.1982). As a result, the inclusion of an aiding and abetting instruction did not add to the substantive charges contained in the indictment. United States v. Walker, 621 F.2d 163, 166 (5th Cir.1980), cert. denied, 450 U.S. 1000 (1981). An aiding and abetting instruction may therefore be given even if the indictment does not allege a violation of the aiding and abetting statute. Id.; see also, United States v. Kegler, 724 F.2d 190, 201 (D.C.Cir.1983).
 
 
 35
 For these reasons, the district court's supplementary instruction did not amount to plain error.
 
 III.
 
 36
 We examine, next, Dents's argument that the district court abused its discretion in admitting evidence of other uncharged misconduct. During the government's case, Andrea Moore testified concerning Dents's activities with respect to Franklin International. Specifically, she testified that after Dents left PMI, he commenced identical operations at Franklin International, soliciting precious metal investments by fraud. Dents objected to her testimony on the ground that it constituted inadmissible evidence of acts unrelated to the conduct charged in the indictment. The district court overruled the objection, concluding that the evidence was admissible under Fed.R.Evid. 404(b) for the purposes of proving intent and knowledge.
 
 
 37
 Under Rule 404(b), evidence of other acts is not admissible to prove that the defendant has a propensity to commit such acts and that it is therefore likely that he committed the acts for which he is charged. United States v. Paulino, 935 F.2d 739, 754 (6th Cir.1991), cert. denied, 112 S.Ct. 883 (1992). Such evidence may be admissible, however, to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b). Under Rule 404(b), the district court must make two determinations before it may admit evidence of similar acts. First, it must make a threshold finding that the evidence of similar acts is probative of a material issue other than character or criminal propensity, such as intent, motive, or knowledge. Huddleston v. United States, 485 U.S. 681, 686 (1988). Next, the court must determine "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." Id.
 
 
 38
 We employ different standards of review to these two determinations. The district court's determination that the evidence of other acts concerns a material issue is a determination of law, and we review it de novo. The district court's balancing of the probative value and prejudicial effect of the evidence, however, is a relevancy determination, which we review under an abuse of discretion standard. Paulino, 755 F.2d at 754.
 
 
 39
 The district court admitted Moore's testimony concerning Dents's activities at Franklin International on the theory that it was probative of the material issue of Dents's knowledge and intent with respect to his previous conduct at PMI. Both mail fraud, under 18 U.S.C. § 1341, and interstate transportation of funds obtained by fraud, under 18 U.S.C. § 2314, are specific intent crimes. See United States v. Goodpaster, 769 F.2d 374, 377 (6th Cir.), cert. denied, 474 U.S. 983 (1985) (18 U.S.C. § 1341); United States v. Brantley, 786 F.2d 1322, 1329 (7th Cir.), cert. denied, 477 U.S. 908 (1986) (18 U.S.C. § 2314). Thus, the government was required to prove Dents's specific intent to defraud PMI's customers.
 
 
 40
 This court has expressly authorized the use of other acts evidence to establish intent and knowledge. Lash, 937 F.2d at 1087; United States v. Hamilton, 684 F.2d 380, 384 (6th Cir.), cert. denied, 459 U.S. 976 (1982). Nevertheless, the evidence of Dents's similar activity at Franklin International would not be admissible unless Dents's intent to defraud or his knowledge of the fraudulent character of the transactions with which he was charged in this case were material; that is, unless Dents placed them in issue.
 
 
 41
 Dents claims the district court abused its discretion by allowing this testimony, because he did not actively dispute the issue of intent. As a result, he argues, the prejudicial effect of the evidence far outweighed its probative value. We disagree. Dents placed his knowledge and intent in issue when his counsel argued during opening statement that "at no time did [Dents] knowingly and intentionally involve himself with a fraud." That Dents started his own corporation and patterned its operations on what he had learned at PMI is strong evidence that he knowingly and intentionally participated in the fraud that occurred at PMI. Evidence of Dents's activities at Franklin was admissible to rebut this assertion of lack of knowledge. See Lash, 937 F.2d at 1087. Finally, the district court gave the jury a cautionary instruction on this evidence, thus minimizing any potential prejudicial impact it might have had. In light of these facts, the district court did not err in admitting this evidence.
 
 IV.
 
 42
 Dents's final assignment of error is that there was insufficient evidence to support his convictions.
 
 
 43
 Our review of the sufficiency of the evidence in support of a jury conviction is limited to determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 44
 Dents focuses his challenge to the sufficiency of the evidence on the issue of his withdrawal from the PMI scheme.[2] He argues that there was insufficient evidence for the jury to conclude that he had not withdrawn from PMI by January 11, 1985. As we have noted, Dents had the burden of proving that he had withdrawn from the scheme by that date. Lash, 937 F.2d at 1083. To establish withdrawal, he was required to "show that he took affirmative action to defeat or disavow the purpose of the conspiracy." Id.
 
 
 45
 Dents attempted to carry this burden by arguing that he withdrew from the PMI scheme when he voluntarily left PMI in December of 1984 to start his own business. The government rebutted this showing in two ways. First, it demonstrated that Dents's new business was patterned on PMI, suggesting that the purpose of his resignation from PMI was not to defeat or disavow the objects of the PMI scheme but to cash in on them more profitably. Second, the government presented evidence that Dents remained involved with PMI in January of 1985. Dents stayed in contact with members of the PMI conspiracy after leaving PMI, and one PMI investor testified that he received a call from Dents in January. Moreover, two letters written by Dents on PMI stationery on December 16 and 26, 1984, prompted a PMI customer, Harold Hawk, to mail a contract extension check to PMI on January 3, 1985. In addition, Dents wrote a check on a PMI bank account on January 7, 1985 and received a PMI check on the same date.
 
 
 46
 This evidence was sufficient for a rational jury to conclude beyond a reasonable doubt that Dents had not withdrawn from the PMI scheme by January 11, 1985. As a result, Dents remained liable not only for his own acts in furtherance of the scheme but also for the acts of his co-schemers. The government presented an abundance of evidence that the individual investors identified in Counts II through VI had been defrauded by PMI during the statutory limitations period. The district court therefore did not err in denying Dents's motions for judgment of acquittal.
 
 V.
 
 47
 For the reasons stated, we AFFIRM the district court's judgment of conviction on all counts.
 
 
 
 *
 The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 We note that the district court should have made it clear in its instructions that the withdrawal defense applied to the non-conspiracy counts not just because they related to a conspiracy, but also because they involved a fraudulent scheme. The court's oversight of this nuance does not amount to plain error, however, because the court properly instructed the jury to apply the withdrawal defense to Counts III through VI, even if it failed to explain why that defense was applicable
 
 
 [2]
 Dents also challenges his conviction on Count IV on the ground that the individual investor identified in that count, M.M. Moore, did not testify at trial. Although the government does not address this issue, it apparently misidentified this particular investor in the indictment, because the government did produce the testimony of one M.M. Mares, who purchased a metals contract through PMI on the date alleged in Count IV. Dents has thus mischaracterized his argument with respect to this count. The issue raised by Dents does not concern the sufficiency of the evidence but rather involves a variance between the indictment and the evidence. With respect to such variances, this court has observed:
 Not every variation between the indictment and the proof is unfair. A fatal variance occurs only where there has been such a variance as to " 'affect the substantial rights' " of the accused. Substantial rights are affected only when a defendant shows " 'prejudice to his ability to defend himself at trial, to the general fairness of the trial, or to the indictment's sufficiency to bar subsequent prosecutions.' "
 United States v. Hurst, 951 F.2d 1490, 1501 (6th Cir.1991) (citations omitted), cert. denied, 112 S.Ct. 1952 (1992). Dents has made no attempt to show any substantial prejudice resulting from the variance of names between the indictment and the proof, and upon reviewing the record, we can find none.